ALEXANDER v. GOSSETT.

1. On an issue of disputed boundary between A and B, a witness was improperly permitted to testify that on a survey of adjoining land purchased by witness from C, that C ran a certain line as the boundary between A and B, these parties, A and B, not being present, and it not being shown that C was dead nor that he ran the dividing line originally, nor that he was a surveyor or chain-carrier.
2. The witness might testify to acts done by the surveyor in his presence, but not to matters which would be facts only by the aid of hearsay evidence explanatory of acts otherwise unintelligible.

Before HUDSON, J., Oconee, November, 1886.

The opinion fully states the case.

*Mr. W. J. Stribling*, for appellant.

*Mr. S. P. Dendy*, contra.

October 12, 1888. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. Thomas Alexander, now deceased, formerly owned a tract of land known as the "Watson Survey." About 1828 he sold off to Richard Carver one hundred acres, more or less, which subsequently came into the possession of the defendant, Gossett. The remainder of the "Watson Survey" was afterwards purchased by James S. Alexander, who is now dead,

and the plaintiffs are his heirs, and brought this action, claiming that the defendant is in possession of fifty acres more of the Watson land than was sold to Carver by their ancestor, Thomas Alexander. The case is substantially a contention as to the true boundary of the hundred acre tract sold to Carver in 1828—whether, indeed, a certain line, "A, B," on the plat, made by surveyor Ervine under order of court, is the true dividing line of the Carver purchase, or the line "A," as claimed by the defendant. It seems that Carver purchased and paid for the 100 acres, that the "dividing line was run and marked," but not by a surveyor, and that there was neither plat nor deed of the land made; and that the whole controversy was finally reduced to the question as to where the dividing line had been established. There was much conflicting testimony, but the main contest in the case was as to the admissibility of certain testimony alleged to be incompetent. Under the charge of the judge, the jury found "for the plaintiffs the land in dispute."

The defendant appeals on several grounds, but from the view the court takes, it will not be necessary to consider any of them but the first, which was substantially as follows: "To rebut certain evidence the plaintiffs put George W. Philips on the stand and asked him the following questions, to wit: 'Describe the line between Alexander and Carver. Mr. Norton. Was Carver present? A. No, sir. Mr. Norton objected. The Court ruled: He can state as a fact where a surveyor ran a line in surveying a certain tract of land. He merely states what the surveyor did, where he carried the chain, and where corners were. If he saw the Watson land run by a surveyor, the dividing line between that and Carver's, he can state what that line was,' &c. To this ruling defendant's attorney excepted, on the ground that the witness was permitted to testify as to where a line was run as a dividing line between two adjacent owners of separate parcels of one original tract, when his own testimony showed that he had no knowledge, except from 'hearsay,' that it was a dividing line," &c.

In order to understand this exception clearly, it will be necessary to make a short statement. Philips, the witness, was called by the plaintiffs to support the line "A, B," as the original line

marked between the parties.    He was not present when the orig-
inal line was marked off, nor did he ever hear either of the par-
ties interested say where the line was; but he endeavored to
connect himself with the controversy in the following manner.
He said one Grisham wished to sell him a piece of land (Adair)
which adjoined the Alexander land, and he (Grisham) said, "I
will clear the line on that land, and he then got up the paper
and run Thomas Alexander's land, and it was in the Watson
plat; and he run the line between Alexander and Carver, and
that is why I know anything about the line.    He was then asked
to describe the line between Alexander and Carver."    (Mr. Nor-
ton objected as stated.)    Philips, the witness, was allowed to
trace on the plat where Grisham run what he called the dividing
line.    This was years after the original line had been marked off,
and it did not appear that Grisham was a surveyor or that he is
now dead.

. Was the information derived from Grisham on the occasion of
this volunteer survey as to the original dividing line between
Alexander and Carver mere "hearsay evidence," or was it admis-
sible under the exception allowed in the case of ancient bounda-
ries?    This court has lately had occasion to consider the allow-
able exception to the general rule which excludes hearsay evi-
dence.    In the case of *Sexton* v. *Hollis* (26 S. C., 236), the
authorities are cited and the law of this State announced in the
following terms: "In this country, however, the exceptions seem
to have been extended so as to render such testimony admissible
in cases of boundaries between private estates (*Ellicott* v. *Pearl*,
10 Peters, 412), as well as to admit the declarations of deceased
persons, who shall appear to have been in a situation to possess
the information, and not interested, on questions of boundary
between private estates, as, for instance, the declarations of sur-
veyors, chain carriers, &c.    But we are not aware of any other
exception which has been recognized either by the courts of this
country or of England, and as we are admonished by Chief Jus-
tice Marshall, in *Mima Queen* v. *Hepburn* (7 Cranch, 290), of
the danger of allowing fresh exceptions to a well settled and
highly salutary rule of evidence, we are not inclined to do so."

In the light of this decision we do not think that the witness,

Philips, could testify as to the declarations of Grisham. Three things are necessary, (1) the boundaries must be ancient; (2) the declarant must be dead; and (3) he must have been in a position to know the boundary as the surveyor or chain carrier, who originally run the land. This is manifestly the intent of the rule, which would be perverted by allowing any one, at any time, without any special information on the subject, and without any responsibility, in the absence of the interested parties, to run a supposed dividing line at his pleasure, and thus make testimony admissible within the exception allowed. See *Blythe* v. *Sutherland*, 3 McCord, 259, and 1 *Greenl. Evid.*, section 145 and notes.[1]

But attention is called to the distinction between declarations and acts, and it is insisted that the witness, Philips, had the right to testify at least as to what he saw Grisham do—that such testimony was primary and in no sense secondary or "hearsay." But it seems to us that we cannot shut our eyes to the transparent fact, that the very full knowledge the witness seems to have acquired on the occasion of the Grisham survey, must necessarily have been derived from information imparted, as well as from observation. With a proper regard for truth, it is impossible to assume that the witness learned all that he states as a mere looker-on, without any assistance from conversation or explanation. Then how can we distinguish as to how much of the testimony was derived from one source and how much from the other? We cannot doubt that the part of it which practically connected the testimony with the controversy as to the boundary, and therefore made it important, such as the names of the parties, the dividing line, &c., was derived, and could only have been derived, from information imparted. How else could the witness know that there was such a thing as a dividing line between two separate parcels of the "Watson land;" or if so, where it was? Suppose on that occasion the parties had been deaf mutes, with only the power of acquiring knowledge by observation, we take it, all that Philips could have told of the proceeding would have been that he saw Grisham enter the land at a particular point and move over it in a certain direction, and make certain marks, &c., &c., without observation or explanation, which, as testimony,

---

[1] See, too, *Lynn* v. *Thomson*, 17 S. C., 135.—REPORTER.

would have fallen very far short of that which was given. The witness himself said, "Grisham ran Thomas Alexander's land, and it was in the Watson plat, and he run the line between Alexander and Carver, and that is why I know anything about the line," &c. If inference be necessary, it is unanswerable that Grisham told him all about it.

We think it was misleading for the judge to rule in general terms, without qualification or explanation, that "if he [witness] saw the Watson land run by a surveyor, the dividing line between that and Carver, he can state what that line was." It seems to us this was assuming that the witness had previous knowledge of the Watson land and the dividing line through it between Carver and the Alexanders; and also that Grisham was a surveyor, in the meaning of the rule as to knowledge of the subject matter; which we have just considered. In this view we cannot concur. There is no evidence that Grisham was a surveyor, certainly none that he "originally located the line." Nor did it appear that he knew anything more about it than any other adjacent landowner. As we understand it, no part of the Adair land, which Grisham wished to sell to Philips, reached to the dividing line in question; and therefore in "clearing his line," there was no necessity whatever for him to go upon the dividing line. There may be some difficulty in drawing the line clearly between acts and declarations, in transactions which necessarily involve both. But it seems to us that it would render title to lands very insecure, if, upon a question of location, a witness were allowed to testify as to his information derived years ago from one (not now present) who, without authority from the parties in interest, without justification or excuse, and without any special knowledge on the subject, voluntarily went upon the lands of his neighbors and undertook to locate a dividing line between them, in the particular manner indicated by the witness.

This makes it unnecessary to consider the other exceptions as to alleged error in the exclusion of the testimony of other witnesses.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial.