8968

SOUTHERN REALTY AND INVESTMENT CO. v. KEENAN.

(83 S. E. 39.)

BOUNDARIES. LOCATION OF LINES. ADVERSE POSSESSION. TRESPASS. EVIDENCE. CHARGE. APPEAL AND ERROR.

1. DEEDS—TITLE OF GRANTOR—PRIORITY OF GRANTS.—Where two parties purchased adjoining land from the same source, the description contained in the prior deed controls, since no subsequent deed from that source could deprive the prior grantee of any portion of the lands conveyed to him.

2. TRESPASS—TITLE OF PLAINTIFF—DESCRIPTION.—Where the boundary line between two adjoining tracts of land, the title to which was derived from a common grantor, is in dispute, the claimant in possession is entitled to hold against all the world except the true owner, and the other claimant can recover in an action of trespass only in case the land in dispute is within the description in the conveyance to him.

3. TRIAL—REQUESTED CHARGE—ASSUMPTION OF FACTS IN ISSUE.—A requested charge, which assumes the point in issue, must be refused, where the testimony as to that point is in conflict.

4. TRIAL—INSTRUCTIONS—ASSUMPTION OF FACTS.—In an action for trespass, where the parties claimed under separate deeds from a common grantor, and it appeared that the survey for the description in the conveyance to plaintiff, which was the prior conveyance, had

been lost, a requested charge, which assumed that the boundary of plaintiff's land was known, and which would give to plaintiff all the property in excess of the quantity mentioned in defendant's deed, was properly refused.

5. BOUNDARIES — DESCRIPTION — RELATIVE IMPORTANCE. — The relative weight to be given evidence of disputed boundaries is ordinarily a question of law, and such evidence ranks as follows: (1) Natural boundaries; (2) artificial marks; (3) course and distance. But this rule is not absolute, and may be changed by the special circumstances in the case.

6. TRIAL—REQUESTED CHARGES—MODIFICATION—IMMATERIAL CHANGE.— The modification of a charge requested by plaintiff in an action for trespass, one defense to which was adverse possession, by the insertion of the word "mere" before the word "cultivation" in the statement that the cultivation of the land would not be an adverse, exclusive holding, made no change in the meaning of the language, and an exception to the modification cannot be sustained.

7. APPEAL AND ERROR—REVIEW—ERROR FAVORABLE TO APPELLANT.—The further modification of the charge by the addition of the clause that the occupation must be adverse—that is, open, notorious, continuous, and in sight—was favorable to plaintiff, and he, therefore, cannot complain.

8. EVIDENCE—DECLARATIONS—LOCATION OF MONUMENTS.—In determining the location of the lines of a survey, the declaration of chain carriers and axmen, who were present at the original survey and who had since died, may be considered.

9. APPEAL AND ERROR—INVITED ERROR.—Where plaintiff and defendant claimed adjoining lands under separate deeds from a common grantor, and plaintiff, whose grant was earlier, but whose survey had been lost, alleged that the survey of defendant's tract correctly located the line, it cannot complain that the Court's instruction permitted the location of defendant's survey to govern the location of plaintiff's line.

10. APPEAL AND ERROR—REVIEW—OVERRULING MOTION FOR NEW TRIAL—STATEMENT OF GROUNDS.—An exception to the refusal of a motion for a new trial "upon the ground stated in the motion" refers to grounds not stated in the exception, and therefore does not conform to the rule.

11. APPEAL AND ERROR—ERROR WAIVED IN APPELLATE COURT—FAILURE TO ARGUE—OBJECTIONS.—An exception that is not discussed in the argument is deemed to be abandoned.

Before GAGE, J., Columbia, December, 1912. Affirmed.

Action by Southern Realty and Investment Company against R. C. Keenan. From a judgment for defendant, plaintiffs appeal. The facts are stated in the opinion.

*Messrs. Lyles & Lyles,* for appellant, cite: *As to charge on rules of location:* 2 Bay 516; 1 McC. L. 167; 1 Hill L. 12; Harper L. 454; 1 McC. L. 232; 3 McC. L. 223; 67 S. C. 33; 1 McC. L. 584. *Adverse possession:* Code Civil Proc. 102 to 105. *Mixed possession:* 1 Cyc. 1130, *et seq.*

*Messrs. E. L. Craig* and *Melton & Belser,* for respondent, cite: *As to rules of survey:* 4 Enc. Law 764 and 771; 2 Spear L. 68; 1 Strob. L. 143; 1 Rich. 491; 3 Strob. 130; 14 Enc. Law 784, 789, 804; 1 Spear 193; 3 Rich. 80. *Adverse possession by defendant:* 50 S. C. 293; *Ib.* 457; 39 S. C. 14; 45 S. C. 317; 79 S. C. 57; 14 S. C. 549; 1 Cyc. 1132. *Declarations of chain carriers and axmen:* 29 S. C. 421; 3 McC. L. 227. *Location question for jury:* 82 S. C. 71; 1 Strob. 143; 1 Rich. 135; 44 S. C. 548.

October 10, 1914.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This is an action for trespass, in which the plaintiff asks judgment against the defendant for one thousand dollars actual, and ten thousand dollars punitive damages, for knowingly and wilfully trespassing upon the property of the plaintiff.

It seems from the record that Joseph Newman owned a tract of land in Richland county and mortgaged it. The mortgage was foreclosed and the land was ordered to be sold in five lots. On the 2d June, 1873, lots 4 and 5 were sold to Mrs. Joanna Newman, through whom the plaintiff claims, on the same day lots 1 and 2 were sold to William P. Geiger. Lot 3, that lies between lots 4 and 5 and lots 1 and 2, was not sold until 5th April, 1875, when it was sold to Mrs. Sarah J. Wiles, through whom the defendant claims. Lots 4 and 5 were sold to Mrs. Newman as they appeared on a general plat of the whole tract. This plat was not recorded and has been lost. The deed to Mrs. Wiles was

accompanied by a plat made by surveyor, Windsor, which was a separate plat of No. 3. This original plat was lost and only the recorded copy and copies of the record are used.

The plaintiff alleges that it owns lots 4 and 5 and that the defendant has taken possession of a part of its land in the southern portion of its lots 4 and 5, adjoining lot 3. Surveyors were appointed—Mr. Shand on behalf of the plaintiff, and Mr. Wilson on behalf of the defendant. These surveyors brought in a plat in which the plaintiff's claim is represented by a yellow line and the defendant's claim by a red line. The land lying between the red and yellow lines is the land in dispute. The jury found, in the main, for the defendant, and the plaintiff appealed on numerous exceptions.

Before taking up the exceptions it is well to make some preliminary statements. Ordinarily, the defendant's deed and plat would have nothing to do with this case. The plaintiff and the defendant have tried this case on a question of title. They claim from a common source, and the plaintiff's deed being the older, no subsequent deed from the same source could take away from the plaintiff and its grantors any portion of lots 4 and 5 conveyed by that deed. (There being no question as to intermediate conveyances, we will speak of the plaintiff's deed and the defendant's deed.) The question is not what land was conveyed to the defendant, but what land was conveyed to the plaintiff.

If the defendant's deed overlapped the plaintiff's deed, it was no defense as to actual damages. If the defendant's deed and plat does not cover the disputed land, the plaintiff has no right of action unless the land lies within lots 4 and 5, which is all it claims. Where the claim is title, the defendant being in possession, has the right to hold against all the world except the true owner. If, however, the disputed land is within lots 4 and 5 and the defendant, having a deed and plat that showed that he had

crossed the line, then the taking of the plaintiff's land might be considered a wilful trespass. It must first be shown that the taking of the disputed land was a taking of a part of 4 and 5. Plaintiff's plat, however, was lost and he could only fix his line by fixing the defendant's line. Plaintiff's deed conveyed to it to the line of No. 3. When the line of No. 3 was determined, then the line of 4 and 5 was fixed. It would seem that the plaintiff's troubles were over when it had proved the defendant's plat. Each tract is bounded by the other.

This is not an ordinary case. The plaintiff's surveyor said that the Windsor plat is incorrect and would not close. The defendant's surveyor said that it was unreliable and that neither his red line nor Mr. Shand's yellow line cor- responded with the line of the Windsor plat. He said further that the northern line on the Windsor plat did not correspond with the marks on the trees; that he had to choose between the line on the plat and the marks he thought he discovered on the trees, and he followed the marks on the trees.

Exception 1. "Because his Honor, after charging the first part of plaintiff's first request, numbered 1 (a), as follows, to wit:

"'The complaint in this action alleges a common source of title in Joseph Newman, who held the entire tract which was divided into five smaller tracts and sold under the orders of the Court in the foreclosure proceeding which has been offered in evidence. This is practically admitted by the defendant, and the first question for the consideration of the jury then is what was the true dividing line between tracts 4 and 5, bought as one tract at the sale by Mrs. Joanna B. Newman, and tract 3, the back portion of which has since come to defendant, Keenan. The complaint alleges that the northern line of the Windsor plat, as recorded in Deed Book K, at page 69, is the correct line. There is testi- mony tending to show the truth of that allegation * * *

should also have charged the balance of said request, as follows, to wit:

" ' * * * and there is no testimony to the contrary. Both of the surveyors appointed by the Court in this cause are in accord that the green lines on the official map drawn from the point A, called the Geiger corner, up the Miller ditch to the point F, and thence by a straight line to the point D, in the Winnsboro road, are in substantial accord with the northern lines of the Windsor plat as drawn on the record. I, therefore, charge you to find that the green lines on the official map are the true dividing lines between the two tracts. There, however, is a plea of the statute of limitations, and you will further consider how the rights of the parties have been affected by that.'

"The errors being (1) that there was no testimony in the cause to the contrary of the proposition charged by his Honor; and (2) that both of the surveyors appointed by the Court in the cause were in accord that the green lines on the artificial map from the point A, called the Geiger corner, up the Miller ditch to the point F, and thence by a straight line to point D, in the Winnsboro road, are in substantial accord with the lines of the Windsor plat as drawn on the record, and the portion of the request so refused should have been charged."

His Honor could not have charged as requested. That charge would have been to direct a verdict for the plaintiff. Besides, appellant's surveyor, Mr. Shand, testified:

Q. And arriving at the course, your line was according to scale? A. No, my line, ED, Miller ditch and Winnsboro road, did not correspond either with course or distance.

Exception 2. "Because his Honor, having charged the first portion of plaintiff's request, numbered 6, as follows, to wit:

" 'It is admitted by both the surveyors that the line "CB" shown on the plat of survey made in this cause, corresponds with the southern line of the Windsor plat, which was

attached to the deed from Sheriff Dent to Mrs. Wiles, except that it now appears to be somewhat longer.'

"Should also have charged the remainder of said request as follows, to wit:

" 'However, the western boundary of the tract called for by the deed being the Geiger mill lands, the surveyors were bound to extend the line to the line of the Geiger mill lands. They were bound then to run along the Geiger mill lands to a point that would reach the southern boundary line of the Mrs. Joanna B. Newman tract, and were then bound to run along the southern line of that tract back to the public road at a point which in the plat is described as being seven chains from "C," the point of departure; for, although the western line of tract No. 3 is put down as being 14.3 chains, a distance that would be greater than the scale length of the western line as shown by the Windsor plat, it could not be carried beyond the southern line of the tract already conveyed to Mrs. Newman.'

"The error being that the deed from Sheriff Dent to Mrs. Sarah J. Wiles and others, having been executed and delivered nearly two years after the deed of Mrs. Joanna B. Newman and calling for the Geiger mill lands as the western boundary, the rule of survey required the surveyors to run along that line, and if said line so run along the Geiger mill lands reached the tracts conveyed to Mrs. Joanna B. Newman before running the distance put down in figures by Windsor nearly two years after the conveyance to Mrs. Newman, then the surveyors were bound to stop at the line of the Joanna B. Newman tracts, and were bound to run along the southern line of that tract back to the point in the Winnsboro road."

His Honor could not have charged this. The refused portion of this request assumed that the southern boundary of Mrs. Newman's land was known. It was the point at issue. It would have been practically to instruct a verdict, because if the request meant anything, it was an instruction

to the jury to adopt Mr. Shand's western line and disregard Mr. Wilson's line, and also to disregard the distance on the western line of the Windsor plat.    Mr. Shand further said: "Q. But the correspondence you speak of is that correspondence by scale?    A. Yes, sir, according to that scale, but not by figured distance, corresponds by scale with the Windsor, but not the Windsor plat figured distance."

Exception 3. "Because his Honor, the presiding Judge, having charged the first part of the plaintiff's request, numbered 7, as follows, to wit:

" 'In locating the northern line of tract 3, conveyed in 1875 to Mrs. Wiles, the southern line of tracts 4 and 5 previously conveyed to Mrs. Newman would be the controlling factor, as tracts 4 and 5 had been previously conveyed by the same Court, in the same cause, to Mrs. Newman.' * * *

"Should have charged the remainder of said request, as follows, to wit:

" ' * * * and it is evident that it was the intention of the Court to convey only what was left of the original tract, supposed to be only fifty acres; and in locating that line the jury must take into consideration the shape of the Windsor plat, its scale of course and distance, and the area now found within those lines; and even if that plat had called for three marks within the lines of the Joanna B. Newman tract, they must be disregarded by the jury.'

"The error being that it appeared to the Court by matter of record in the deed of conveyance to Mrs. Joanna B. Newman of tracts 4 and 5, and in the deed of conveyance to Dr. W. P. Geiger of tracts 1 and 2, and the deed of conveyance of Sheriff Dent to Mrs Sarah J. Wiles and others, conveying tract 3, that it was the intention of the Court to convey only in tract 3 what was left after the conveyance of tracts 4 and 5 and 1 and 2, and that it was supposed to be only fifty (50) acres.    That being so, it was the duty of the jury to take into consideration the shape of the Windsor plat, its scale of course and distance, and the area now

found within those lines, and it was the duty to disregard any tree marks found on said plat within the lines of the Joanna B. Newman tract."

His Honor could not have charged the omitted portion. It assumed that the southern boundary of 4 and 5 were known. It would have been to tell the jury to disregard the artificial boundaries and to transfer to lots 4 and 5 all of lot No. 3 that exceeded fifty acres. The Windsor plat was not the plat by which 4 and 5 were conveyed. The southern boundary of lots 4 and 5 were fixed in 1873, and even if he held that the subsequent deed of the defendant in 1875 did not convey all the land outside of lots 4 and 5 and 1 and 2, still the plaintiff has no cause of action unless the disputed land lies within 4 and 5.

Exception 4. "Because it was error for his Honor, the presiding Judge, to change the plaintiff's request to charge, numbered 8, by striking out the word 'greater,' and inserting the word 'exclusive,' and by adding thereto the following, to wit:

" ' * * * unless the marks are proven to the jury's satisfaction and are inconsistent with other circumstances above named,' so that the request as charged read as follows:

" 'In settling a disputed line, the rules of survey require that the jury should take into consideration all of the circumstances, including the shape and appearance of the plat, the amount of land within its lines, etc.; and there is no hard and fast rule that tree marks shall have exclusive weight than the platted course and distance, shape of the plat, quantity of land, etc., unless the marks are proven to the jury's satisfaction and are inconsistent with other circumstances above named.'

"The error being that it indicated to the jury that even if the tree marks were not proven to the jury's satisfaction, they should have greater weight than the platted course and distance, shape of plat, quantity of land, etc., but not exclusive weight, and that if the marks were proven to the

jury's satisfaction and were inconsistent with other circumstances above named, they were to have exclusive weight, and in effect charging what weight the jury were to give to the testimony."

The relative weight to be given to evidence of location is a matter of law and they rank in this order: 1st, natural boundaries; 2d, artificial marks; 3d, course and distance. *Colclough* v. *Richardson,* 12 S. C. L. (1 McC.) 167. The rule is not absolute; special circumstances may cause a change. This request left the boundaries to the jury. This exception cannot be sustained.

Exception 5. "Because in charging plaintiff's ninth request to charge, as follows, to wit:

" 'In locating a disputed line, even if the jury are forced by their conclusion as to tree marks to divert the line from the platted course and distance, the rule requires then, as soon as the objects are passed, to return to the platted course and distance, if there are no other controlling circumstances.'

"His Honor modified the same by adding, * * * 'such as marks along the diverted line on natural objects;' the error being that such indicated to the jury what weight they were to give to marks along the diverted line on natural objects; whereas, it was for the jury to say what would be controlling circumstances."

What has been said as to exception four applies here.

Exception 6. "Because his Honor modified plaintiff's tenth request to charge by adding the word 'if' after the word 'Windsor,' making the request read as follows, to wit:

" 'I charge you that, even if you find from the preponderance of the testimony, that the gum stump and the pine stump shown upon the red line "DE," were station marks on the northern line of the plat of tract No. 3 made by Windsor, if there is no other evidence justifying a continuation of that line in the direction of "E," and it should be returned to the course of the platted line or in the direction

of said station marks on the platted lines which have been established to the satisfaction of the jury.'

"The error being that there was no other evidence justifying a continuation of that line in the direction of 'E,' and the rules of survey required a return to the course of the platted line, or in the direction of station marks on the platted line which might have been established to the satisfaction of the jury."

The evidence that justified a finding was a question for the jury and his Honor properly added "if."

Exception 7. "Because it was error for his Honor to refuse plaintiff's thirteenth request to charge, as follows, to wit:

" 'There is no evidence in this case that any part of the land outside of the yellow line "DF" has been continuously enclosed for ten years or more, except the land actually occupied by the tenant house and garden, built by Mr. Keenan; and even if the jury should find that such house and garden have been there for ten years or more, they would not suffice to make out a title for the defendant for the statute of limitations, except as to the land actually covered by said house and garden.'

"The error being that there was no evidence of any enclosure of any part of the land, except that stated in said request, and plaintiff was entitled to have the same charged."

Exception 8. "Because it was error for His Honor to refuse to charge plaintiff's fourteenth request to charge, as follows, to wit:

" 'There is no evidence in this cause that any part of the lands outside of the yellow line "DF" has been actually cultivated or improved by the defendant in this action for ten years or more, except as to the edges of his field and the ends of some rows; and even if the jury should find, from the evidence, that such edges of the field and ends of the rows had been held by the defendant adversely for the period of ten years, such holding would not make out a title

for defendant by the statute of limitations as to any other part of the land in dispute.'

"The error being that there was no evidence that any part of the land in dispute had been cultivated or improved by the defendant for ten years or more, except as to the edges of his fields and the ends of some rows, and plaintiff was entitled to have the request charged."

These exceptions assume that the land in dispute were within lots 4 and 5.

Exception 9. "Because his Honor erred in modifying plaintiff's sixteenth request to charge, by adding the word 'mere' before the word 'cultivation,' and by adding 6, 7 the following: 'The occupation must have been adverse—that is, open, notorious, continuous and in sight,' so as to make said request read as follows, to wit:

" 'That upon the conveyance of tracts 4 and 5 to Mrs. Joanna B. Newman in 1873, by the sheriff's deed, they became one tract of land, and if the jury find, from a preponderance of the testimony, that the said Mrs. Newman and those claiming under her down to the plaintiff's corporation in this action have held possession of the said tract of land, or any part thereof, since that date, their possession in law would be presumed to be possession of the entire tract according to its metes and bounds and the lines of the plat under which they claim. And even if the jury should find that the defendant in this action has usually cultivated any part of the land across the line of said tracts 4 and 5, and such cultivation has continued for ten years or more, inasmuch as the possession of the tract was also in the plaintiff and its predecessors, the mere cultivation of such land would not be an adverse, exclusive holding, and could not, therefore, ripen into title under the statute. The occupation must have been adverse—that is, open, notorious, continuous and in sight.'

"The error being that under the provisions of law, if Mrs. Newman, and those claiming under her down to the

plaintiff corporation in this action had held possession of said tract of land, or any part thereof, since the date of the conveyance to Mrs. Newman, their possession in law was presumed to be the possession of the entire tract according to its metes and bounds and the lines of the plat under which they claimed, and the law would not consider the occupation of the defendant, Keenan, coexistent with that of the rightful owners to be adverse, and plaintiff was entitled to have the request charged as submitted."

The word "mere" added nothing to the sentence. Cultivation is "mere cultivation." The addition at the last was favorable to the appellant, and, therefore, not reversible error. This exception cannot be sustained.

Exception 10. "Because his Honor charged as follows, to wit:

" 'As a general rule, and in the absence of any other controlling evidence of a contrary intent, it is only where there are no monuments called for, or they are called for erroneously, or no marked trees or corners can be found, and the place where they once stood cannot be ascertained by evidence that it is permissible to rely upon course and distance to determine boundary lines.'

"The error being that it indicated to the jury what weight they were to give to the various circumstances for their consideration in determining the accuracy of the lines of the plat."

Exception 11. "Because, upon the request of the defendant, his Honor charged as follows, to wit:

" 'Quantity is the least certain element of description, and even where a definite area is referred to in describing the land it will be taken as merely descriptive and will not, unless a contrary intent clearly appears, prevail against a more particular and certain description with reference to monuments, marked trees or courses and distances.'

"The error being that the Court in the case of the administrators of *Jesse Drafts* v. *Newman and others,* having had

before it a fixed and definite amount of land divided into five tracts by description which called for all of the land except fifty (50) acres, and having ordered the sale of the remaining tract described as containing fifty (50) acres, without any qualifying terms, such as more or less, the quantity became an important element in the description of said tract of land, and the Court should not have indicated to the jury that they should give little or no weight to the statement of the amount."

Exception 12. "Because, at the request of the defendant, his Honor, the presiding Judge, charged as follows, to wit:

" 'In locating the lines of a tract of land conveyed by a survey, it is the purpose of the location to ascertain and determine the lines actually run and marked by the surveyor in making such survey, and where the lines of the plat differ from those actually marked on the ground the lines actually marked on the ground control; but the jury must consider all the circumstances.'

"The error being that, while the principles laid down in said charge might have been correct if the question had been as to the location of a tract of land surveyed out of a larger tract and cut out at the time of the survey, it was wholly wrong when the question was as to the determination of a line of division fixed and determined nearly two years before the survey in question, and leading the jury to believe that they might fix the disputed line by determining the line actually run and marked by the surveyor nearly two years after the line of plaintiff's predecessors had been fixed, even though the lines marked on the ground might differ from that previously fixed and established.

We have seen that the comparative weight to be given artificial marks and course and distance is ordinarily a question of law. These exceptions are overruled for the reasons already mentioned.

8, 9      Exception 13. "Because his Honor, the presiding Judge, charged as follows, to wit:

" 'In arriving at the lines of a survey actually run and located by the surveyor the jury should consider all of the evidence tending to establish the location, including the declaration, if any are shown by the evidence of chain carriers or axmen who were present on the original survey and since deceased, as to where the lines were run, and including the conduct of the parties relative to, or in recognition of, the lines.'

"The errors being (1) that it was instructing the jury that they should consider declarations of chain carriers or· axmen who were present on the original survey and since deceased, in varying the line of a survey actually made and laid down by the surveyor himself; (2) because it in effect charged the jury that they must determine a line pre-existing for nearly two years by the parol declarations of such men as to where lines were run on the survey, regardless of whether they were run according to the line actually pre-established and existing or not."

*Alexander* v. *Gossett*, 29 S. C. 421, 7 S. E. 814, is authority for the correctness of the charge under the first assignment of error.

Ordinarily, it would be error to establish the line of lots 4 and 5 made in 1873 by the line of No. 3, subsequently sold in 1875, but it must be remembered that the plaintiff adopted this method and it cannot complain.

Exception 14. "Because his Honor, on the request of the defendant, charged the jury as follows, to wit:

" 'In order for plaintiff to recover it must show by the preponderance of the evidence where the dividing line between tracts 4 and 5 and tract 3 as established by Windsor runs, and it must prove in one of the ways required by the law of this State that it has a fee simple title up to that line, and that the alleged trespass by the defendant was beyond that line.'

"The error being that the charge instructed the jury that in establishing the line between tracts 4 and 5, owned

by plaintiff, and tract 3, which line had been established in 1873 under the orders of the Court, plaintiff must show by the preponderance of the evidence where such dividing lines as established by Windsor in 1875 runs."

Exception 15. "Because his Honor charged as follows, to wit:

" 'If you find from the evidence, if such evidence there be, that the northeast line on Windsor's plat calls for a straight line from a point on the Winnsboro road for a certain distance passing through certain marked trees, which can be now identified, and that the line varies from the course indicated on the plat must yield to the course indicated by the marked trees unless there is evidence which shows the contrary to be the case.'

"The error being that the rights of plaintiff acquired by its predecessors in 1873 to a fixed line was to be determined by certain trees marked, or supposed to have been marked, by Windsor upon his survey in 1875, regardless of the fact that it was shown that they mere marked for the first time and there was no evidence to indicate that there had been trees on the line of the original survey."

The statement under the second allegation of error to exception 13 disposes of these exceptions and they are overruled.

Exception 16. "Because his Honor charged the jury as follows, to wit:

" 'Now, there is no question about it, that if there was natural boundary—that is, trees, or rocks, put there by nature, or branches put there by nature, and if the original Windsor survey called for a line by or through those natural objects, and those natural objects were stationed all along the line around where Wilson runs, the Wilson line will control; but when they leave station D, there is set down on the plat and their plat here a natural object called gum stump. Now revert to the Windsor plat. What does the Windsor plat call for there? If there was the stump of a

gum tree, which originally stood there and by which Windsor carried his chain, and if the tree had died, and this is the veritable stump that stands in its place, then the surveyor passing by that stump took the next point, and the next point is a pine stump, if that is the veritable stump of the original pine that stood there, that's a question for the jury, and if Windsor carried his chain along that pine tree and located on the plat as one of the monuments he surveyed, then it must govern without reference to what the course was. The question for the jury is whether or not that gum stump, or that pine stump, were the stumps of trees that did stand there and by which Windsor went, whether they are the veritable stumps of real trees that Windsor saw and recognized and noted on his plat, if so, then the surveyors now making a survey must go by those monuments; is there any other monument now standing along the whole line by either line, the red line or the green line, to guide the jury, if there is, the jury must follow the monument, if there is not, the jury need not go that way; but suppose at some point along the line a witness says there was at that point a tree which has been noted upon the Windsor plat, for instance, if at point G, which is Wilson's furthest northeast corner—northwest corner—if at that point there is now no monument of the original Windsor survey, has a witness testified that there was a monument there and that he saw it, and that the Windsor plat, if this be a copy of it, called for an oak point there on that Windsor plat, and if this be a copy of it, calls for a blackjack at the station marked E, has any witness proven by the preponderance of the testimony to the satisfaction of the jury, that there stood at the time of the Windsor survey at points G and E oak trees, there must have been so proven to the satisfaction of the jury in running the line from D, passing E to G; in other words, the jury must be satisfied from the testimony that at points G and E there were original stations made by Windsor when he made this plat, if he did make it.'

"The error being (1) that his Honor thereby indicated to the jury that they must be controlled by natural objects seen and marked by Windsor on his survey in 1875 in determining a line previously fixed in 1873, and indicating that if the stumps of the gum tree and the pine tree were stumps of trees by which Windsor carried his chain, then that the surveyors now making the official survey have to be governed by those stumps, without reference to what the course was; (2) that he thereby indicated that if there were no monuments now standing on the line claimed by the plaintiff as having been surveyed and established in 1873, the jury must, or could, disregard the same; (3) thereby, in effect, charging upon the facts of the case and indicating to the jury what weight they were to give to the testimony; (4) thereby indicating to the jury that if they believed by the preponderance of the testimony that at the time of the Windsor survey there stood at the points G and E oak trees they must find in their verdict a line to said points."

What has already been said disposes of all these assignments of error and need not be repeated.

Exception 17. "Because his Honor, the presiding Judge, refused plaintiff's motion for a new trial upon the grounds stated in said motion."

This exception does not conform to the rule, in that it refers to grounds not stated in the exception.

Exception 18 is not discussed, and, therefore, deemed abandoned.

The judgment is affirmed.

MR. JUSTICE GAGE, having tried this case on Circuit, did not sit on the hearing of this appeal.