733 S.E.2d 224

Barbara B. DANLEY WILLIAMS, Sylvia H. Durant Cotton, Janie Durant Ancrum, Tricia Durant Middleton and Carolyn Durant White, Respondents,

v.

Elgie M. MOORE, Larry M. Moore, W.F. Moore, Howard Danley Daniels, Jr., Earl Daniels, Cynthia Daniels, if they or any of them be alive; John Doe and Jane Doe, whose true names are Unknown and Fictitious names designating the unknown heirs, devisees, distributees, issue, executors, administrators, successors, or assigns of the above named Defendants, if they or any of them be dead, and William E. Danley, Elizabeth Danley, Elie

---

Danley, Joe Danley, Rosetta Danley Simmons, Harriet Danley Durant, Elizabeth Danley Stigers, Howard Danley Daniels, William E. Danley, Jr., Harold Daniels, Melvin Durant, John A. Durant, all deceased; and Mary Roe and Richard Roe, whose true names are unknown and fictitious names designating infants, persons under disability, incompetents, imprisoned, or those persons in the military, if any; and also all other persons, known or whose true names are unknown, claiming any right, title interest in, or lien upon the real estate described in the Complaint herein,

Of whom Elgie M. Moore, Larry M. Moore, and W.F. Moore are the Appellants.

Appellate Case No.2010–151961.

No. 5029.

Court of Appeals of South Carolina.

Heard June 5, 2012.

Decided Sept. 5, 2012.

94

Donna K. Taylor, of Taylor Bowley & Byrd, LLC, of Charleston, for Appellants.

James K. Holmes, of The Steinberg Law Firm, LLP, Richard E. Fields, and Barry I. Baker, all of Charleston, for Respondents.

LOCKEMY, J.

In this property dispute, Elgie and Larry Moore appeal the trial court's decision to grant relief to Barbara B. Danley Williams, Sylvia H. Durant Cotton, Janie Durant Ancrum, Tricia Durant Middleton, and Carolyn Durant White (collectively known as Respondents). Specifically, the Moores argue the trial court erred in: (1) basing its decision on the incorrect survey; (2) denying the Moores' motion for directed verdict

based upon standing; (3) allowing inadmissible, unreliable hearsay testimony into the record; (4) basing its order upon findings of fact not reflected in the record; and (5) revealing bias in favor of the Respondents. We affirm the trial court.

## FACTS

In 1905, William E. Danley purchased approximately eight and one-half acres near the town of Lincolnville.[1] A plat of that property was prepared by J. Hamilton Knight (Knight plat) at the time of the conveyance and depicted an "old wagon road" running across the northern portion of the property before turning north across railroad tracks to the town of Ladson. Railroad tracks also ran along the northern boundary of the property.

Danley subsequently conveyed two and one-half acres of his property to William M. Richardson in 1910. He also conveyed a strip of land measuring 29 feet by 232 feet (the "boot") to Central Realty Company (Central) in 1912. Everyone agreed the original purpose of the boot was to connect a planned subdivision to the old wagon road shown on the Knight plat to provide ingress and egress to Ladson. Title to the remaining acreage (Danley property) remained in the Danley family until the property was sold for non-payment of taxes to Charles Ross in 1959, who reconveyed the property to Harriet Durrant and Elizabeth Staggers by deed in 1960.[2] Since that time, Durrant and Staggers have paid the taxes on the Danley property still shown as containing eight and one-half acres.

The two and one-half acre parcel and boot that Danley sold to Richardson and Central, respectively, were conveyed to Union Corporation (Union) in April of 1913. The deed for that conveyance referenced a plat prepared by James O'Hear dated February 1912 (O'Hear Plat). In preparation of the planned subdivision (Ladson Farms), Union had McCrady Brothers and Cheves, Inc. do a tracing (McCrady Tracing), dated September 20, 1917. The tracing was prepared using the O'Hear Plat. Lot No. 13 of Ladson Farms was sold to

---

1. The Danley tract and Lot No. 13, which will be discussed below, were formerly situated in Berkeley County but are now located in Charleston County.

2. Durant and Staggers were the daughters of Danley.

Patrick Hanley in 1917, and that conveyance references the McCrady Tracing.

Elgie Moore (Elgie), originally purchased fifty-seven acres to the south of the disputed property from Elaine Harrell Finklea in 1976. Thereafter, Elgie filed a plat prepared by James O'Hear Sanders (Sanders Plat) purporting to show the purchase of sixty-nine acres instead of fifty-seven acres. The additional acreage consisted of a large portion of Lot No. 13, then owned by the heirs of Hanley. The heirs of Hanley filed a boundary dispute action against Elgie. The boundary dispute between the heirs of Hanley and Elgie was settled with Elgie purchasing Lot No. 13 by quitclaim and special warranty deeds in 1999.[3] A plat prepared by George A.Z. Johnson (Johnson Plat) depicted Lot No. 13 as it was conveyed in the quitclaim deed. All parties concede the Johnson Plat is incorrect.

Respondents initially commenced this action on July 30, 2007, to quiet title to and determine the boundary of their property. Respondents also moved to refer the action to the Master in Equity, but the Moores objected and requested a trial by jury for the boundary dispute. The trial court ruled the boundary dispute would be tried by a jury, but the presiding trial court would determine how to handle the equitable issues. Upon the call of the case, all parties agreed to a bench trial.

The granddaughters of Danley, Sylvia H. Durant Cotton and Janie Durant Ancrum, testified at the trial. Cotton was 79 years old and Ancrum was 69 years old. Cotton lived on the Danley property at some point during her childhood and both women visited the Danley property as children. They testified that they would take a train to the Lincolnville Station and walk the mile to the Danley property along what was then a dirt road known as the old Lincolnville Road. Both remembered crossing over a small wooden bridge Danley built over a ditch on the side of old Lincolnville Road to get to his property. Cotton recalled that in the 1930's there was an old wagon road on the other side of the wooden bridge that

3. The resulting piece of property from this settlement will be referred to as the Moore property.

connected to the adjoining subdivision.[4] Cotton also testified that in the early 1960's, Lincolnville Road was widened and paved. In order to widen the road, Cotton stated that a certain amount of land was taken from all the property along it, including the Danley property. Furthermore, she stated the Highway Department paved over the old wagon road as part of the widening of the highway. Cotton continued to visit the Danley property even after the family home collapsed. She stated that Elgie stopped her a few times while she was visiting the Danley property to ask her who she was and what she was doing there.

Ancrum was born after her grandfather passed away in 1939 and did not remember an old wagon road. She did remember a sandy path that led from the wooden bridge to her grandmother's fenced front yard. Ancrum testified that the Highway Department paved and widened Lincolnville Road to make it a highway. The widening included creating shoulders on the side of the highway and a ditch on at least one side. Due to the widening, Ancrum stated the sandy path she used to walk along had to be paved.

Respondents also offered the testimony of Ben Coker. Coker had been a land surveyor for 36 years.[5] He started his own business with a partner and performed land surveying for South Carolina Electric and Gas, Mead Westvaco, and Dupont, as well as others. He had been appointed as a land surveyor by the Master in Equity in Dorchester County and qualified as an expert witness in other cases. Here, Coker was qualified as an expert land surveyor by the trial court.

Coker began by discussing the Knight Plat and testified it was not drawn to scale, contained only limited measurements, and did not show where the old wagon road was located on the property, how wide it was, or how far it was from the railroad tracks. Coker explained a Mead Westvaco plat, which depicted the boundary of an adjacent property, showed that an oak tree marked the northwestern corner of its property, which

---

4. After a review of the plats and testimony, it appears this portion of the old wagon road ran parallel to Lincolnville Road.

5. Coker is an unlicensed surveyor. However, he stated the only difference between an unlicensed and a licensed surveyor is that an unlicensed surveyor cannot sign a plat.

was also the southwestern corner of the Moore property. Coker was able to locate an oak tree that matched the description given in the Mead Westvaco plat. The oak tree was also referenced on the O'Hear Plat. He testified that while the actual tree had blown over, the stump was still standing and a rebar was found in it. After plotting the southern boundary from the oak tree to a square iron at the southeastern corner of the Danley property, Coker testified that his plat (Coker Plat), the Sanders Plat, and the Knight Plat all agreed on at least the southern boundary line. Coker continued to describe his procedure for surveying the disputed property. Coker stated that after looking at the Highway Department's condemnation plans, it was apparent the Highway Department was attempting to lay the new highway as best they could right on top of the existing old Lincolnville Road. Furthermore, he stated the boot is now located within the confines of the Department of Transportation (DOT) right-of-way as well as the railroad right-of-way.

The Moores cross-examined Coker on his use or non-use of the railroad right-of-way as a boundary, but the full record of that line of questioning was not provided. After being given a hypothetical where the northern boundary is assumed to be the railroad right-of-way, Coker agreed six feet would be left in the boot property after subtracting the land taken by the DOT right-of-way.

The Moores' expert surveyor, Ronnie L. Tyler, explained his method for preparing his plat (Tyler Plat). Tyler testified the oak tree Coker used as a boundary marker did not exist any longer because the tree was laying on its side with the root system attached to the end of the trunk. He stated the iron pin that was found in the oak tree's place was set by a surveying company in 2002, but was not accurate because there was a possible six and one-half foot variance due to the tree's uprooted position. Further, he testified he would have started with the railroad right-of-way as the constant and not the oak tree in order to line the property. Tyler stated he had not had an opportunity to finish his survey work, including the measuring of the remaining boot. The trial court granted the Moores forty-five days to allow Tyler to complete his survey and agreed to hold the case in abeyance until that time.

When the trial court reconvened, a settlement offer was placed on the record, which the Moores had refused. Thereafter, Respondents offered rebuttal expert testimony from Frank McAuley to confirm Coker's testimony and survey. McAuley testified he became involved through an attorney in Columbia that inquired about information concerning a title claim against Old Republic Title Company. He was asked to go with Coker and review all the work that had been done to prepare the Coker Plat. McAuley confirmed that the oak tree used in the Coker Plat would have been an accurate point to use. He also stated the boot would have existed underneath the pavement of what was a highway. When questioned about the differing placement of the boot on the older plats, he answered that

> [s]ome of [the old plats] had it on the north side of the railroad right of way. Some had it on the north side of the highway right of way and so forth and they just couldn't agree. I don't think they actually knew where it was or worried about it because they were trying to get connection to the crossing road.

McAuley concluded after reviewing all the documents and measurements that the Coker Plat was an accurate representation.

The trial court found "[t]here was no separate conveyance of the two and a half (2 ½) acres or the boot into the [Respondents'] predecessor in title." Further, the trial court stated "[b]oth parcels were included in the conveyance of the larger five hundred and thirty-six (536) acres to Central Realty which was later conveyed to the Union Corporation." It found the Coker Plat was prepared in accordance with the O'Hear plat and the McCrady Tracing of Ladson Farms which was "specifically referenced in the conveyance of Lot No. 13 to Hanley from whom the [Moores] took title." The trial court stated "[t]he [Moores'] claim of ownership to Lot No. 13 [was] limited as to what was conveyed to Mr. Hanley, their predecessor in title, and they are entitled to nothing more and to nothing less." Furthermore, it found the boot was taken by the Highway Department during the construction of the clay surfaced Old Ladson Road in the early 1940's and "when the Highway Department widened, paved [the highway] in 1951 and 1964." The trial court proceeded to explain that its

finding was based on: (1) measurements shown of the property line "between the Danley property and Lot No. 13 being four hundred and forty-four (444) feet to the point where it connected to the boot as shown on the O'Hear plat and the tracing of Ladson Farms"; (2) "the testimony of [Cotton] and [Ancrum] that no wagon road existed on the northern boundary of their grandfather's property after the Old Ladson Road was constructed in the early 1940's" and (3) "the Highway Department drawing for the improvement of Van Oshen Road in 1951 and further improvements in 1964, neither of which showed any road existing on the south side of Old Ladson Road or Lincolnville Road."

The trial court enjoined the Moores from entering Appellants' property or interfering with their use or enjoyment of it. Further, the trial court authorized Coker to enter the Moores' and the Appellants' property for the sole purpose of placing survey stakes or markers on each of the corners of the properties.

Also, on January 8, 2010, the trial court ordered the equitable issues be tried by a Master in Equity. The Moores' motion to reconsider was denied, and this appeal was filed on February 8, 2010. Elgie passed away on March 21, 2010, but Larry Moore (Larry), Elgie's son and heir to the property in dispute, remains a party.

## ISSUES ON APPEAL

1. Did the trial court err in its decision to rely upon the Coker Plat over the Tyler Plat?

2. Did the trial court err in denying the Moores' motion for a directed verdict on the issue of Respondents' standing?

3. Did the trial court err in allowing impermissible hearsay testimony on several occasions?

4. Did the trial court err by basing its decision on findings of fact that were not supported by the testimony in the record?

5. Did the trial court err by showing bias in favor of Respondents?

## STANDARD OF REVIEW

 "A boundary dispute is an action at law, and the location of a disputed boundary line is a question of fact." *Bodiford v. Spanish Oak Farms, Inc.*, 317 S.C. 539, 544, 455 S.E.2d 194, 197 (Ct.App.1995) (citing *Clements v. Young*, 310 S.C. 73, 74, 425 S.E.2d 63, 64 (Ct.App.1992); *Saluda Land & Lumber Co. v. Fortner*, 162 S.C. 246, 247–50, 160 S.E. 594, 594–95 (1931)). "On appeal of a case tried without a jury, the appellate court's jurisdiction is limited to correction of errors at law." *Madren v. Bradford*, 378 S.C. 187, 191, 661 S.E.2d 390, 393 (Ct.App.2008) (citing *Epworth Children's Home v. Beasley*, 365 S.C. 157, 164, 616 S.E.2d 710, 714 (2005)). "The judge's findings are equivalent to a jury's findings in a law action." *Id.* (citing *King v. PYA/Monarch, Inc.*, 317 S.C. 385, 389, 453 S.E.2d 885, 888 (1995)). "Questions regarding credibility and weight of evidence are exclusively for the trial judge." *Id.* at 191–92, 661 S.E.2d at 393 (citing *Sheek v. Crimestoppers Alarm Sys.*, 297 S.C. 375, 377, 377 S.E.2d 132, 133 (Ct.App.1989)). "The appellate court will not disturb the trial court's findings of fact as long as they are reasonably supported by the evidence." *Id.* at 192, 661 S.E.2d at 393 (citing *Epworth*, 365 S.C. at 164, 616 S.E.2d at 714).

## LAW/ANALYSIS

### I. Surveys

 The Moores contend the trial court was presented with conflicting expert testimony and surveys, and its choice to rely on Coker and the Coker Plat was unreasonable and warrants a reversal by this court. We disagree.

The Moores seem to imply Coker's status as an unlicensed surveyor undermines his credibility, although they do not specifically raise an issue regarding the trial court's qualification of Coker as an expert. While Coker was not a licensed land surveyor, the trial court found his training and experience qualified him as an expert as to the boundary line in this case, and we do not see any reason to doubt that qualification. *See Pope v. Heritage Cmtys., Inc.*, 395 S.C. 404, 423–24, 717 S.E.2d 765, 775 (Ct.App.2011) ("The qualification of an expert witness and the admissibility of his or her opinion are matters within the sound discretion of the trial court and will not be

disturbed on appeal absent an abuse of that discretion and a showing of prejudice.... As a gatekeeper, the trial court must examine the substance of the testimony to determine if it is reliable, regardless of whether the expert evidence is scientific, technical, or other specialized knowledge." (internal citations and quotations omitted)).

Reaching the issues that were specifically raised regarding the trial court's reliance on the Coker Plat, the Moores contend: (1) the trial court failed to recognize and follow established law that natural boundaries and monuments, when present, establish the intent of earlier surveys and grantors rather than artificial monuments; (2) the trial court failed to recognize and follow the metes and bounds of the deed by which the two and one-half acre parcel was conveyed by Danley to Richardson; (3) the trial court erred in ruling that Coker's work, even though it was certified by Paul Lawson, was accurate; (4) the trial court failed to consider a deed and plat from Emerson and Richardson conveying property to the south of the two and one-half acre parcel; (5) the trial court erred in relying upon deeds and plats to determine the boundaries of the boot, the two and one-half acre parcel, and what remains of the Danley property, which were subsequent to the Respondents' predecessor in title's conveyance out of their ownership and which are inconsistent with those senior deeds and plats; (6) the trial court erred in finding the boot was in the railroad right-of-way; (7) the trial court erred in finding Coker correctly identified the location of the oak tree believed to mark the southwest corner; (8) the trial court failed to hold the Respondents to the existing property law requiring them to have constructive notice of all deeds and plats in their own chain of title; (9) the trial court erred in finding that the two and one-half acres and the boot were conveyed at the same time; (10) the trial court erred in accepting the Coker Plat as accurate when it was inconsistent with prior plats drawn by Coker as well as Respondents' pleadings; and (11) the trial court erred in finding that any part of the Danley property conveyed by the 1905 plat could have been within the railroad right-of-way. We disagree.

"The rules for determining disputed boundaries are not inflexible, but are subject to modification depending upon the particular facts of each case." *Bodiford,* 317 S.C. at 543 n.

1, 455 S.E.2d at 197 n. 1 (citing *Garrett v. Locke,* 309 S.C. 94, 98, 419 S.E.2d 842, 845 (Ct.App.1992)). "When determining boundaries, resort is generally had first to natural boundaries, next to artificial monuments, then to adjacent boundaries, and last to courses and distances." *Id.* (citing *Garrett,* 309 S.C. at 98, 419 S.E.2d at 845). "This rule, however, merely indicates the weight generally given to each type of evidence of location." *Id.* (citing *Southern Realty & Investment Co. v. Keenan,* 99 S.C. 200, 207–09, 83 S.E. 39, 41–42 (1914)). "The rule does not provide an order of admissibility, such that evidence of artificial boundaries is admissible only if there is no evidence of natural boundaries." *Id.* "The facts of a case may therefore require that an inferior means of location be preferred over a higher means of location." *Id.*

The rule does not provide an order of admissibility; thus, the fact that Coker used artificial monuments to challenge the accuracy of the Tyler Plat does not render his testimony incompetent or inadmissible. We reject the Moores' challenges to Coker and McAuley's testimony and the Coker Plat. *See Madden v. Cox,* 284 S.C. 574, 583, 328 S.E.2d 108, 114 (Ct.App.1985) (appellate court cannot judge the weight or credibility of expert testimony on appeal); *Hibernian Soc'y v. Thomas,* 282 S.C. 465, 470, 319 S.E.2d 339, 342 (Ct.App.1984) (appellate court has no power to weigh conflicting evidence in a law case). We believe there is evidence in the record to support the trial court's decision.

■ While the Moores raise many other evidentiary arguments, these arguments relate to the weight the trial court assigned to the Respondents' witnesses and exhibits. We believe it's clear the trial court weighed the conflicting expert testimony and found the Coker and McAuley's testimony as well as the Coker Plat to be more credible. There is ample evidence in the record regarding both experts' methods of surveying the properties and determining the boundaries. Further, the parties were able to present all the relevant plats for the properties at issue. Again, while the Moores may disagree with the weight the trial court accorded the Respondents' exhibits and witnesses' testimony, we find there is reasonable evidence to support the trial court's findings. Accordingly, we affirm the trial court.

## II. Directed Verdict

The Moores maintain the trial court erred in denying their motion for a directed verdict on the issue of Respondents' standing. We find this issue unpreserved.

Despite the Moores' assertions, neither a motion for a directed verdict or judgment notwithstanding the verdict (JNOV) on the basis of the Respondents' standing is in the record on appeal. *See I'On, L.L.C. v. Town of Mount Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000) (finding that an issue must be raised to and ruled upon by the lower court to be preserved for appellate review); *see also In re McCracken,* 346 S.C. 87, 92–93, 551 S.E.2d 235, 238 (2001) (only issues raised in a directed verdict motion can properly be raised in a JNOV motion). "The record must show that the issue was raised in the trial court." *Solley v. Navy Fed. Credit Union, Inc.,* 397 S.C. 192, 213, 723 S.E.2d 597, 608 (Ct.App.2012) (citing *Zaman v. S.C. State Bd. of Med. Exam'rs,* 305 S.C. 281, 285, 408 S.E.2d 213, 215 (1991); *Reid v. Kelly,* 274 S.C. 171, 174, 262 S.E.2d 24, 26 (1980)). "[T]he appellant has the burden of providing an adequate record on appeal." *Id.* at 214, 723 S.E.2d at 608 (citing *Harkins v. Greenville Cnty.,* 340 S.C. 606, 616, 533 S.E.2d 886, 891 (2000)); *see also* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal.").

There is no motion for a directed verdict or JNOV in the record on appeal. Moreover, there is no objection to Cotton or Ancrum's testimony. Because the Moores did not meet their burden of providing an adequate record on appeal, we find this issue unpreserved.

## III. Hearsay

The Moores contend the court allowed impermissible hearsay testimony during Johnson's testimony regarding: (1) the Moores purportedly moving a survey stake and ejecting people from the property and (2) the contents of another attorney's file, which included a letter. We find that even if this testimony was hearsay, the Moores failed to prove any prejudice stemming from its admission.

There was testimony from Johnson, Cotton, and Coker regarding the Moores questioning their presence on the property and then removing them from the property, all without contemporaneous objections. *See Burke v. AnMed Health,* 393 S.C. 48, 55, 710 S.E.2d 84, 87 (Ct.App.2011) (finding a contemporaneous objection is typically required to preserve issues for appellate review). Johnson also spoke of the removal of survey markers by Moore without a contemporaneous objection. The Moores only objection occurred when Johnson was questioned about Frances Cantwell's file and letters contained within that file. Respondents asked, "In this Frances Cantwell file there were letters to Mr. Hanley that said that when he tried to go out on his property he had been chased off by guns?" Johnson responded that the letters indicated Hanley had been chased off the property by Moore with guns. The Moores objected on the basis of hearsay but were overruled by the trial court. We do not believe the Moores suffered any prejudice from the admission of the testimony. *See Starkey v. Bell,* 281 S.C. 308, 315–16, 315 S.E.2d 153, 157 (Ct.App.1984) (though testimony may constitute inadmissible hearsay evidence, no prejudice is shown when it merely corroborates other evidence admitted in the case).

Further undermining the Moores' claim of prejudice is the fact that the court did not rely on the alleged hearsay to determine the pertinent issue at trial, the boundary dispute. We find the trial court thoroughly explained its basis for determining the boundary, and there is reasonable evidence in the record consisting of numerous plats and expert testimony to support its decision. Additionally, the Moores fail to establish prejudice stemming from the trial court's injunction. The Moores were determined to have no ownership rights in the Danley property, and therefore, they are not prejudiced by the trial court enjoining them from entering or interfering with the property. Thus, even if the trial court erred in admitting the alleged hearsay, we find it was harmless error. *See Roche v. Young Bros., Inc., of Florence,* 332 S.C. 75, 85–86, 504 S.E.2d 311, 316 (1998) (finding the admission and rejection of testimony is largely within the trial court's discretion, "the exercise of which will not be disturbed on appeal absent an abuse of that discretion or the commission of a legal error that results in prejudice for appellant") (citing *Baber v.*

*Greenville Cnty.*, 327 S.C. 31, 41, 488 S.E.2d 314, 319 (1997)). Accordingly, we affirm the trial court.

## IV. Findings of Fact Not Supported by the Evidence

The Moores contend the following findings of fact were not supported by testimony in the record: (1) no remnant of the old wagon road exists today; (2) the two and one-half acre parcel sale to Richardson and the sale of the boot occurred at the same time; (3) Cotton was born and raised on the Danley property and remained on the property until a young adult; (4) no wagon road existed on their grandfather's property during Cotton's and Ancrum's lifetime; and (5) there was no separate conveyance of the two and one-half acre parcel or the boot into Moore's predecessor in title. We find that even if any of these statements were in error, the error was harmless.

### 1. Old Wagon Road

The trial court stated "[n]o remnant of the road exists today," in reference to the old wagon road. The Moores introduced the Tyler Plat that showed the old wagon road drawn in a location that would place it under the power line maintenance road. On the Tyler Plat, there is a road titled "old public road to Ladson," and then it states, "remnants under power lines." Tyler testified he knew where parts of the old wagon road remain, "because portions of it, the remnants of it are underneath the power lines that are along the northern boundary of the Danley property and still being used today as a service road by South Carolina Electric and Gas to service their poles on that side." Tyler stated he used the Knight Plat as a reference in preparing the Tyler Plat.

In contrast to Tyler's testimony, Respondents introduced testimony stating the old wagon road was taken when the Highway Department widened and paved Old Ladson Road in 1951. Furthermore, it was stated that the location of the old wagon road at the point it crossed the railroad tracks did not correspond to the location of the old wagon road depicted in the Tyler Plat.

The trial court stated that while the Knight Plat depicted the old wagon road running "across the northern boundary of [the] Danley property before turning north across the railroad

tracks and continuing on to the town of Ladson," that plat did not contain "measurements showing the location or width" of the road. The trial court based its decision that no wagon road existed today on Cotton's and Ancrum's testimony that no road existed on the northern boundary of their grandfather's property after the Old Ladson Road was constructed in the early 1940's, and on Highway Department drawings. Ultimately, the trial court chose to give more weight to the Respondents' experts and testimony, and we find there is reasonable evidence to support the trial court's decision.

### 2. Two and one-half acres and the boot

The trial court found Danley conveyed the two and one-half acre parcel to Richardson at the same time he conveyed the boot to Central, on February 29, 1912. After reviewing the exhibits in the record, it appears that on May 2, 1910, Danley executed the deed to Richardson. However, the deed was not recorded until February 24, 1912. On February 29, 1912, Danley executed the deed to Central. While it is not clearly legible, the deed regarding Central appears to have been recorded on March 6, 2012.

We find that despite these discrepancies, the date of the two deeds' conveyances did not affect the trial court's decision. The trial court noted Central conveyed the two and one-half acre Richardson property and the boot as part of the five hundred and thirty-six acre conveyance to Union which the O'Hear Plat depicts. The trial court agrees that eventually, Elgie was conveyed both the boot and the two and one-half acres as part of Lot No. 13. Any mistaken dates by the trial court regarding the deed conveyances did not affect the substantive outcome. Thus, we affirm the trial court.

### 3. Cotton and Ancrum

Respondents concede Cotton did not testify she was born on the Danley property, but point out she did live on the property at times during her childhood. Under these facts, we believe whether Cotton was born on the Danley property is insignificant, and any mistake by the trial court was harmless. As to Cotton and Ancrum's memory of the old wagon road, they did testify regarding their knowledge of its existence.

The Moores merely disagree with the weight the trial court gave their testimony. *See Madden v. Cox*, 284 S.C. 574, 583, 328 S.E.2d 108, 114 (Ct.App.1985) (appellate court cannot judge the weight or credibility of testimony on appeal). Accordingly, we affirm the trial court.

### 4. Confrontation Involving Larry Moore

 Respondents concede the use of "confrontation" may be too strong in its implication. However, there is testimony that one of the Moores approached Johnson and Cotton on separate occasions questioning who they were and asking them to leave the property. Despite the word usage, we find the trial court did not base its decision on whether there was a confrontation or merely a conversation between the parties. We find there was reasonable evidence in the record to support the trial court's finding of interaction between the parties. Thus, we affirm the trial court.

### V. Abuse of Discretion and Bias in Favor of Respondents

 While the Moores list many of their appellate arguments as the basis for this court to find that the trial court was biased in favor of Respondents, we find this issue is not preserved for our review.

 The record is devoid of any motion by the Moores for recusal; if they felt the trial court was exhibiting bias, a motion would have been the proper procedure by which to preserve this argument on appeal. *See Butler v. Sea Pines Plantation Co.*, 282 S.C. 113, 122–123, 317 S.E.2d 464, 470 (Ct.App.1984) (stating that "[g]enerally, where bias and prejudice of a trial judge is claimed, the issue must be raised when the facts first become known and, in any event, before the matter is submitted for decision"); *see also Burke*, 393 S.C. at 55, 710 S.E.2d at 87 (finding a contemporaneous objection is typically required to preserve issues for appellate review).

While this rule is flexible in a situation where "the tone and tenor of the trial judge's remarks are such that any objection would have been futile," we do not believe the record supports such a conclusion here. *State v. Thomason*, 355 S.C. 278, 288–89, 584 S.E.2d 143, 148 (Ct.App.2003). After reading through

the record on appeal, it appears both sides were allowed to present their arguments and the trial court's determination of the boundary lines was based on reasonable evidence presented at the trial. Thus, we find the Moores did not preserve this issue for our review.

## CONCLUSION

For the foregoing reasons, we affirm the trial court.

**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.