Curia, jser

O’Neall, J.
From the facts stated in the reports, it is as plain as any thing can be made by description, that the plaintiff’s grant covers the portions now in dispute of the immense territory on which it is located.
*497 It is no objection that the quantity is more than four times the amount stated in the grant, or that the lines are prolonged greatly beyond the distances. So, too, it is no objection that course is sometimes disregarded. It is never so done, unless some countervailing matter compels it to yield.
The defendant’s counsel is wrong in supposing that there is any difference in the rulés of location, as laid down and enforced in the older or more recent cases.
They all maintain that in locating lands, we are to resort, 1st. To natural boundaries, 2d. To artificial marks, 3d. To adjacent boundaries, 4th. To course and distance; but it has never been said, that each of these occupied an inflexible position. It sometimes might occur, that an inferior means of location might control a higher, when it was plain there was a mistake. As where a tract of land is represented as lying on one great stream, and the artificial marks or other circumstances shew that it lies upon another. All that is meant is, that the evidences of location which I have mentioned, are resorted to in their order, unless it appears that the representation in the plat depending upon them, is a mistake. In that event, the mistake is to be corrected. The cases referred to by the defendants’s counsel are decidedly against his inference. Take, for example, Bradford vs. Pitts, 2 Con. Rep. by Mill, 115. It maintains, what I have admitted. always, that when a stream is laid down as running through a tract of land, and artificial marks shew that the surveyor laid it down erroneously, the artificial marks are to be followed, and the precise location of the stream disregarded.
In Starke vs. Johnson, 2 Con. Rep. by Mill, 9, Judge Nott affirms the rule, that when boundaries are called for, and are not controlled by natural boundaries or artificial marks, the lines must be extended to them without regard to distance. Still that rule is subject to the qualification which he states, and which I recognized on this trial, that if the distance was so great as to shew that the boundaries called for were merely conjectural, they might be rejected. In Coats vs. Matthews, 2 N. and M‘C. 99, the western line ran five chains beyond Little Saluda, and the eastern line 10 chains ; the plat represented the river *498 as lying within the plat, and yet the line between the western and eastern lines as perfectly straight; if it was so closed, it would throw out a large part of the river, and a considerable quantity of land. It was held, that the line should be run from the termini of the western and eastern lines until it struck the river, and then, that the river should be followed as the boundary. These three cases, without Wash and Holmes, are enough for the plaintiff. For begin at a corner proved by Jonas Matthews on the Brownfield survey, called for as a northern and western boundary, and run out the Brownfield survey, (and about which there is no dispute, except as to its trenching on the plaintiff’s grant,) and it brings us satisfactorily to the Williamsburg line. There is no mistake here. For the corner proved by Jonas Matthews was shewn as the corner of both the Brownfield and Fulwood grants. Running the Williamsburg line, the marked trees cannot be found, but the line is marked by blazes, and there is no dispute about that line. How far did Fulwood and Dunn, the surveyors of Ful wood’s grant, pursue it? The natural marks called for are found — such as Camp branch, Little Kingstree, Big Kingstree, Long Branch, Bull branch, and a branch not named. The greatest increase of the line, is from the beginning to Bull branch ; it is only necessary to double the distance from it, to reach Blain’s and Graham’s grants. There is, therefore, nothing unreasonable in running to them. When we reach them, the rule is, their lines are to be followed instead of the line in the plat; and the boundary being represented as lying the whole extent of the line running east, until it approached Kingstree swamp, the surveyor had two things to guide him, the adjacent and the natural boundaries. When he approached Kingstree swamp, he ran and passed across and through it, as represented. That was exactly what was done in Coats vs. Matthews. He then ran four lines with course and distance, and on his fifth line, he found it was necessary to change his course and disregard his distance, to reach his next boundary. He made the least possible change in course, to reach the boundary. This was yrhat was right, as can be demonstrated. He had run as *499 far as he could upon course and distance, to close the plat. Let the survey stop there. The surveyor must go back, and begin at the pine corner on the Brownfield grant, proved by Jonas Matthews, and come round the other way, running out the lines on the Brownfield grant, and the Furnel Lee, Isham Nettles, John M'Alister and Charles M'Alister lands; having run these, and got to the west corner of the Charles M'Alister grant, as was said by Mr. Johnson, the very intelligent surveyor of the defendants, to whose beautiful small plat I am referring, there is no alternative but to change the course of the plat, and close from point to point. Here, it is in vain to object to the great increase of distance in the line; for the increase on its parallel, the district line, made the increase here inevitable. So, too, it is in vain to talk about running to the M'Alister grant, lying in Tupeloe bay. For that could not close the survey, and.would be an outrageous change of course, nearly reversing that of the plat. Having reached the M'Alister boundary, the lines of it are to be pursued according to the grant to him; thence John M'Alister’s grant, also called for as a contiguous boundary, is reached and pursued until it conducts the surveyor to the point from which he reaches the Isham Nettles grant — and following its boundaries, he is carried to the Furnel Lee grant, and from its boundaries he is carried to a point from which he reaches the Brownfield grant — and pursuing its lines, the beginning corner is reached. Considering the immensity of the survey, it is the most perfect location I ever saw, and it is due to the surveyor, Mr. Campbell, to say that hardly any other man combines the skill, patience and industry, which could have accomplished such a work. On the Nettles, Lee and Brownfield grants, were found artificial marks, corresponding with the Fulwood survey. So, too, the Open bay was found in that quarter, and lying within the survey, exactly as represented, with one exception, that two lines were represented as cornering inside, when in fact they corner outside. This was no objection to an otherwise plain location. Taking the whole case together, we have no doubt that the plaintiff’s grant is located, and that he must legally recover the lands in *500 dispute, except the Bryant Cameron grant, on which the defendant, Graham, proved a possession sufficient to give him a possessory title. The jury having found verdicts in manifest violation of the plaintiff’s right of property, must be corrected in this respect. They cannot give the plaintiff’s land to the defendants. They, like the judge, are bound to conform to the law, and give the plaintiff the possession of his freehold.
The motions for new trials are granted.
Richardson, Evans and Butler, JJ. concurred.
Wardlaw, J. dissented.