2302

J. David BODIFORD, Jr., Respondent v. SPANISH OAKS FARMS, INC.,
The United States of America Acting Through the Administrator of the
Small Business Administration, and the Federal Land Bank of Columbia,
Defendants, of whom Spanish Oak Farms, Inc., is, Appellant.

Court of Appeals

(455 S.E. (2d) 194)

W. *Scott Palmer,* Santee; and *James D. Mosteller, III,* Blackville, *for appellant.*

*Thomas M. Boulware,* Barnwell, *for respondent.*

Heard Jan. 12, 1995.

Decided Feb. 13, 1995.

HOWELL, Chief Judge:

J. David Bodiford, Jr. brought an action against Spanish Oak Farms, Inc., and others, to establish a boundary line between Bodiford's property and property owned by Spanish Oak Farms. Bodiford also sought damages for timber Spanish Oak removed from the disputed tract. The matter was referred to a special referee for final judgment, with any appeal

directly to the Supreme Court. The referee found in favor of Bodiford and Spanish Oak appeals. We affirm.

At issue is approximately twenty-five acres of timber land in Barnwell County. Bodiford claims this was part of a tract of one hundred and seventy-four acres he purchased in 1987. This action arose after Bodiford discovered Spanish Oak had removed timber from about eight acres of the property. Bodiford's complaint alleges Spanish Oak's claim derives from erroneous plats which do not comport with older plats in Spanish Oak's chain of title or legal descriptions in deeds in Spanish Oak's chain. Bodiford sought a judicial determination of the boundary of his property as well as the adverse claim by Spanish Oak. Bodiford also sought damages for timber Spanish Oak removed from the disputed tracts. In its answer, Spanish Oak pled a general denial and agreed the court should determine the boundary between the parties' properties.

The parties advised the court they desired an independent survey of the property, and they agreed Donald Smith, a registered land surveyor, could serve this function. Smith concluded that Bodiford's property ended at the high-water mark of an old mill pond which once existed on the property, rather than the center line of Windy Hill Creek, as argued by Spanish Oak. Because the pond no longer existed, Smith made certain assumptions about the high-water mark, concluding that it would have been about 2.5 feet below the lowest part of the mill pond dam. The result was that Bodiford owned the disputed property.

The special referee noted that he "carefully reviewed not only the testimony but also the exhibits offered by both parties." The referee agreed with Smith's conclusion that the high-water mark of the old mill pond is the line between the parties' properties, and that the line is best determined by adopting the elevation of 2.5 feet below the lowest point on the mill dam. Accordingly, the referee found in favor of Bodiford and awarded him $2,400 in damages, representing $300 per acre, for timber Spanish Oak removed from the property. Spanish Oak appeals.

## I.

Spanish Oak argues the referee abused his discretion in relying upon Smith's testimony and written report. Spanish Oak's trial objections were as follows:

As to the exhibits as being outside of the scope of Mr. Smith's role in this case. He was appointed to conduct a survey for the benefit of the court and not render a written opinion based on his investigation of the public record.

\* \* \* \* \* \*

Your Honor, I renew my objection based again on the fact that the opinion appears to in effect be a legal opinion which Mr. Smith is not qualified to render, of course, and is not based on any findings he made with regards to markers, natural boundaries, artificial boundaries, artificial monuments or anything else. The court intended when he was appointed to "survey the boundary line between the parties," and is then outside of the scope of purpose of the court appointment and should not be admitted.

The referee ruled that Smith could not present legal conclusions to the court, but could present his opinion, and the referee interpreted Smith's report as "his opinion as to where he thinks the boundary line should be."

It is clear that Smith was offered as an expert witness, and that he was in fact competent to render expert testimony in the area of land surveying. While Spanish Oak challenged the scope of his duties, it did not challenge Smith's qualifications as an expert. Thus, to the extent Spanish Oak's arguments on appeal can be viewed as challenging Smith's qualifications as an expert, they are rejected. By failing to challenge his qualifications at trial, Spanish Oak has waived the right to present that argument on appeal. As an expert in land surveying, Smith was qualified to review the relevant deeds and plats, and to render his opinion as to the location of the boundary.

Rule 43(m), SCRCP, was added to the Rules of Civil Procedure in 1990, and provides, in pertinent part:

**Expert Testimony.**

**(1) Testimony by Experts.**—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

**(2) Bases of Opinion Testimony by Experts.**— The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

**(3) Opinion on Ultimate Issue.**—Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

Hence, according to Rule 43(m)(3), Smith could render an opinion regarding the ultimate issue in the case to be decided by the special referee, who was the trier of the facts. The weight to be given Smith's testimony was a matter for the referee, as fact finder, and not this Court. The circuit court judge ordered Smith to survey the property and "report the findings of said survey" to the court. One of those "findings" is necessarily his opinion as to where the boundary lies between the parties' properties. We find no error by the referee in allowing Smith to render his opinion as to where the boundary line is, and in using Smith's opinion to make that factual finding.

Spanish Oak further argues that Smith's testimony should have been rejected by the trial court because (1) Smith did not use recognized surveying methodology; (2) Smith's opinion was arbitrary and based on conjecture; and (3) Smith rendered "inappropriate and incorrect" testimony about documents in Spanish Oak's chain of title. Spanish Oak cross-examined Smith to bring out the errors it now raises. While these challenges may raise questions about Smith's credibility or the weight to be given Smith's findings, they do not render Smith's testimony and report inadmissible.[1] Ac-

---

[1] Spanish Oak contends that when interpreting and reconciling the various plats and deeds to determine the location of the boundary, Smith improperly gave preference to courses and distances rather than natural monuments. When determining boundaries, resort is generally had first to natural boundaries, next to artificial monuments, then to adjacent boundaries, and last to courses and distances. *Garrett v. Locke,* 309 S.C. 94, 419 S.E. (2d) 842 (Ct. App. 1992). This rule, however, merely indicates the weight generally given to each type of evidence of location. *Southern Realty & Investment Co. v. Keenan,* 99 S.C. 200, 83 S.E. 39 (1914). The rule does not provide an order of

cordingly, we reject Spanish Oak's challenges to Smith and his testimony. See *Madden v. Cox*, 284 S.C. 574, 328 S.E. (2d) 108 (Ct. App. 1985) (appellate court cannot judge the weight or credibility of testimony on appeal); *Hibernian Society v. Thomas*, 282 S.C. 465, 319 S.E. (2d) 339 (Ct. App. 1984) (appellate court has no power to weigh conflicting evidence in a law case).

## II.

Spanish Oak next argues, under *Watson v. Suggs*, 313 S.C. 291, 437 S.E. (2d) 172 (Ct. App. 1993), Bodiford failed to meet his burden of proof in this case. We disagree. Not every action involving disputed property is in the nature of a trespass to try title. *Watson* was tried by the parties as a trespass to try title; this action, however, was treated by both parties and the court as a boundary dispute. It was not until after the hearing that Spanish Oak attempted to characterize Bodiford's action as a trespass to try title. The central issue in this action was the location of the boundary line between the properties of Bodiford and Spanish Oak. Accordingly, the trial court properly treated the action as a boundary dispute rather than trespass to try title.

A boundary dispute is an action at law, *Clements v. Young*, 310 S.C. 73, 425 S.E. (2d) 63 (Ct. App. 1992), and the location of a disputed boundary line is a question of fact. *Saluda Land & Lumber Co. v. Fortner*, 162 S.C. 246, 160 S.E. 594 (1931). In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed unless found to be without evidence which reasonably supports the judge's findings. *Townes Assocs. Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976). That the parties referred the case to a special referee does not change the scope of review, when, as here, the referee en-

---

admissibility, such that evidence of artificial boundaries is admissible only if there is no evidence of natural boundaries. The rules for determining disputed boundaries are not inflexible, but are subject to modification depending upon the particular facts of each case. *Garrett*, 309 S.C. at 98, 419 S.E. (2d) at 845. The facts of a case may therefore require that an inferior means of location be preferred over a higher means of location. *Fulwood v. Graham*, 30 S.C.L. (1 Rich.) 491, 497 (1845). Thus, the fact that Smith used courses and distances to challenge the accuracy of the Foy plat does not render his testimony incompetent or inadmissible.

ters final judgment. *Leahy v. Starflo Corp.*, 314 S.C. 546, 431 S.E. (2d) 567 (1993); *Wigfall v. Fobbs*, 295 S.C. 59, 367 S.E. (2d) 156 (1988). We therefore must affirm the decision of the trial court if there is any evidence to support his determination of the location of the boundary line.

We find the record contains evidence which reasonably ■ supports the referee's conclusion that the correct boundary between the parties' properties is the high-water mark of the mill pond as determined by Smith. An early deed in both Bodiford's and Spanish Oak's chain of title designates the high-water mark of the mill pond as the boundary line. In addition, several plats and surveys show the high-water mark as a boundary, and several deeds in Spanish Oaks' chain of title refer to the mill pond as a boundary. Thus there is evidence to support the trial court's conclusion that the proper boundary was the high-water mark of the mill pond rather than the centerline of Windy Hill Creek. Because the mill pond no longer exists, Smith was required to locate the boundary by determining where the high-water mark would have been. While Spanish Oak is critical that the record contained no evidence that Smith's methodology was acceptable, the record also does not contain evidence that his method for determining the line was unacceptable. Smith noted that although the water levels varied quite a bit, on average the high-water mark of similar mill ponds was about two and one-half feet below the lowest point of the dam creating the pond. The two and one-half-foot line also fit with the line between the swamp and high ground. Moreover, Smith testified that, to a reasonable degree of engineering certainty, the elevation line he recommended established the boundary line between the property of Bodiford and Spanish Oak, and Spanish Oak offered no evidence placing the high-water mark at any other location. Because there is evidence in the record supporting the trial court's finding that the proper boundary line was the high-water mark of the old mill pond, as well as the determination of where the high-water mark should be located, we therefore affirm the decision of the special referee.

Moreover, even if this case were properly categorized ■ as a trespass to try title, we would still affirm the decision of the referee. In an action of trespass to try title, the defendant in actual possession of the disputed property is

regarded as the rightful owner of the property until the plaintiff proves perfect title, and a mere prima facie showing of paper title by the plaintiff is not enough. *Watson*, 437 S.E. (2d) at 173.[2] While there are four methods through which a plaintiff may establish paramount title, the only method applicable here is the "earlier deed from a common source," which requires the plaintiff to trace his title to a common source from whom both he and the defendant claim through separate chains of title. If the plaintiff can show an earlier deed deriving from a common source, he may dispossess a defendant in possession. *Id.* Spanish Oak contends that Bodiford failed to establish a continuous chain of title which was earlier than Spanish Oak's. Spanish Oak maintains it established it continuous title from 1861 (although this is not clearly explained or established in the record), while Bodiford has a twenty-five-year gap in his chain of title from 1883 to 1908. Spanish Oak's argument ignores the referee's finding that a plat prepared by J.J. Foy in October 1974, upon which H.D. Still prepared his 1983 deed to Spanish Oak of about 95 acres, contained an error. Hence, even if we agreed with Spanish Oak that Bodiford's chain of title can be traced only to the 1908 deed from Annie Hair to G.A. Still, this fact establishes title in Bodiford sixty-six years before Spanish Oak's claim.

### III.

Finally, Spanish Oak argues the referee erred in not finding the interest Bodiford claimed in the property derived from a grant of a license or easement in gross, which was extinguished in the nineteenth century. The language which Spanish Oak characterizes as a license is found in a deed from John A. Zeigler and Ann Zeigler to H.C. Ray, dated August 5, 1861. The deed provides that the Zeiglers

> do grant, bargain, sell and release, unto the said H.C. Ray all our interest in the Mill known as the Reed Old Mill situate in Barnwell District on Windy Hill Creek, to-

---

[2] We note that the record contains no evidence of who had actual possession of the disputed property. Spanish Oak admittedly engaged in logging on eight acres of the property, but this activity hardly establishes actual possession of a twenty-five-acre tract of timber land. In any event, we assume for the sake of this appeal that Spanish Oak was in fact a defendant in actual possession as

gether with the privilege of raising and backing water necessary for all milling purposes, and when so raised the highest water mark shall be the boundary of said tract of land so conveyed with the Mill. . . .

Clearly, the deed conveyed to Ray on fee simple the mill and the property beneath the mill pond, and designated the boundary of the land conveyed as the high-water mark of the pond. We find Spanish Oak's argument to the contrary to be manifestly without merit. *See* S.C. Code Ann. § 14-8-250 (Supp. 1993) (appellate court need not address a point which is manifestly without merit); Rule 220(b)(2), SCACR.

Affirmed.

CURETON and CONNOR, J.J., concur.