539 S.E.2d 414

The STATE, Respondent,

v.

Brett Loring BUTLER, Appellant.

No. 3258.

Court of Appeals of South Carolina.

Heard Oct. 12, 2000.
Decided Nov. 13, 2000.

T. Kirk Truslow, of North Myrtle Beach, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, and Senior Assistant Attorney General Charles H. Richardson, all of Columbia; and Solicitor John Gregory Hembree, of Conway, for respondent.

GOOLSBY, Judge:

A grand jury indicted Brett Loring Butler for possession of cocaine with intent to distribute. A jury convicted him of the lesser included offense of possession of cocaine. Before sentencing, the trial judge ordered Butler to submit to a drug test. When the test returned positive for marijuana, the judge revoked five years of Butler's suspended sentence on a prior conviction and sentenced him to four years imprisonment on his conviction for possession of cocaine. Butler appeals. We reverse and remand.

### FACTS/PROCEDURAL BACKGROUND

On March 8, 1998, William Lynch, a police office with the North Myrtle Beach Police Department, stopped Butler. Butler was driving a red BMW with an Atlantic Chevrolet "temporary paper tag" on the back. Lynch testified that he stopped Butler to check to make sure the car was properly registered and had insurance. After approaching Butler's car, Lynch noticed an overturned cup in the passenger-side floorboard. Suspecting the cup contained alcohol, Lynch asked Butler to open the passenger-side door so that Lynch could examine the cup. Upon examination, Lynch determined that the cup contained Coca–Cola mixed with alcohol. Lynch arrested Butler for having an open container. Lynch then transported Butler to the police station where a search uncovered 1.17 grams of cocaine hidden in Butler's sock. Butler was then arrested on charges of possession of cocaine with intent to distribute.

At trial, Butler moved to have the cocaine suppressed on the ground that Officer Lynch lacked reasonable suspicion that Butler was involved in criminal activity, and thus the stop was unconstitutional. At the suppression hearing, Lynch testified that the reason he pulled Butler over was because Butler's car had a temporary tag on it, and that in his experience, cars bearing these tags could be unregistered, uninsured, or stolen. On cross-examination, Lynch admitted that other than the presence of the temporary tag, there was no indication that Butler was involved in criminal activity or that his car was

unregistered or unlicensed.[1]  Moreover, Lynch did not testify that Butler had committed any traffic violation, that there were any deficiencies with Butler's car, or that he had received a report of a stolen BMW.

The trial court denied Butler's motion to suppress.  A jury convicted Butler of possession of cocaine.  Butler appeals.

## LAW/ANALYSIS

On appeal, Butler argues the trial court erred in denying his motion to suppress.  Butler contends that the stop was unconstitutional because Lynch failed to establish that he had a reasonable suspicion that Butler was violating registration or insurance laws.  We agree.

The Fourth Amendment guarantees "the right of the people to be secure ... [from] unreasonable searches and seizures."[2]  "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision."[3]  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[4]  The police, however, may also stop and briefly detain a vehicle if they have a reasonable suspicion that the occupants are involved in criminal activity.[5]

---

1.
>  Q.:  ... And you are testifying you had suspicion he was involved in criminal activity, based upon his paper tag?
>  A.:  I wouldn't say he was involved in criminal activity.
>  Q.:  ... So you did not believe he was involved in criminal activity, correct?
>  A.:  I can't say for sure if he was or wasn't.  I mean, I deal with paper tags on a daily basis, and some people are and some people aren't.

2.  U.S. Const. amend. IV.

3.  *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); *see also Sikes v. State*, 323 S.C. 28, 448 S.E.2d 560 (1994).

4.  *Whren*, 517 U.S. at 809, 116 S.Ct. 1769.

5.  *Knight v. State*, 284 S.C. 138, 325 S.E.2d 535 (1985).

■ In *Delaware v. Prouse*,[6] the Supreme Court declared unconstitutional random stops of individual cars for the purposes of checking the driver's license and the car's registration, holding:

> [E]xcept in those situations in which there is at least *articulable and reasonable suspicion* that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.[7]

■ Reasonable suspicion must be based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion"[8] and requires a particularized and objective basis that would lead one to suspect another of criminal activity.[9] "Reasonable suspicion entails some minimal level of objective justification for detention, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause."[10] The burden is on the State to articulate facts sufficient to support reasonable suspicion.[11]

■ The State argues that the mere presence of a "temporary tag" on a car is reasonable suspicion that the car is either unregistered, uninsured, or is otherwise involved in criminal activity. We disagree and hold that the mere presence of a temporary tag on the back of a car, without more, is insufficient to provide a reasonable suspicion that the driver is

---

6. 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979).

7. *Id.* at 663, 99 S.Ct. 1391 (emphasis added).

8. *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *see also State v. Lesley*, 326 S.C. 641, 486 S.E.2d 276 (Ct.App.1997).

9. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

10. *Nebraska v. Soukharith*, 253 Neb. 310, 570 N.W.2d 344, 354 (1997).

11. *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979).

violating registration or insurance laws or that the driver is otherwise involved in criminal activity.

South Carolina Code section 56–3–210, titled "Grace period for procuring registration and license," reads as follows:

> Persons newly acquiring vehicles and owners of foreign vehicles being moved into this State and required to be registered under this chapter may have not more than forty-five days in which to register and license them.[12]

Under the statute, a South Carolina resident has forty-five days to register his car and obtain his state-issued license plate.

Unlike other states, South Carolina has not implemented a legislative scheme to temporarily register "newly acquired" cars pending receipt of a permanent tag. If such legislation were in place, the expiration of the forty-five day grace period would be ascertainable by any law enforcement officer and any failure to display the state-issued temporary tag could provide a reasonable suspicion that the car was not registered. Because South Carolina has no such system in place, however, we must decide whether the presence of a temporary tag gives an officer reasonable suspicion that the car has exceeded the forty-five day grace period provided for by statute. We think it does not.

We note that at least two other states have addressed a similar argument made by the State in this case. In *Ohio v. Chatton*,[13] the Ohio Supreme Court addressed the issue of whether the officer's statement that temporary tags are often used in criminal activity provided sufficient reasonable suspicion to stop a motorist.[14] In holding that the mere presence of a temporary tag did not provide a reasonable suspicion of criminal activity, the court stated:

---

**12.** S.C.Code Ann. § 56–3–210 (Supp.1999).

**13.** 11 Ohio St.3d 59, 463 N.E.2d 1237 (1984).

**14.** At the time *Chatton* was decided, Ohio had state-issued temporary tags, but had no law that governed how the tags had to be displayed. The officer who stopped Chatton justified his stop based on two grounds: the tag was not visibly displayed, and cars with temporary tags are often used in criminal activity.

If we were to uphold the detention of appellee ... upon the generalized statement that temporary tags are sometimes used in criminal activity, we would be sanctioning, in effect, the detention of the driver of any vehicle bearing temporary tags. We are unwilling to place our imprimatur on searches of the citizens of this state and their vehicles simply because of the lawful and innocuous presence of temporary tags. The potential for abuse if such a rule were in effect, through arrogant and unnecessary displays of authority, cannot be ignored or discounted.[15]

The Nebraska Supreme Court likewise rejected a similar argument in *Nebraska v. Childs*.[16] In *Childs*, the court noted that to allow temporary tags to create a reasonable suspicion of criminal activity would result in the presumption that every motorist lawfully on the highway with a paper tag was involved in criminal activity, a presumption that goes against the firmly ingrained principle that we presume compliance with the law absent indication to the contrary.[17]

We cannot sanction the random stop of any and every car bearing a temporary tag, leaving in the hands of law enforcement officers the freedom to detain whomever they desire without having to justify why they chose to stop one motorist over another. Requiring law enforcement to articulate a particularized and objective reason as to why they believed the car was unregistered, uninsured, or otherwise involved in criminal activity would alleviate this potential for abuse.

Finally, we refuse to create the suspect presumption in this state that every motorist traveling the highways with a temporary tag is guilty of driving an unregistered or uninsured car and is subject to detention until he or she can prove otherwise. Even the statute that empowers the South Carolina Highway Patrol commands that there be a reasonable belief that a

---

**15.** *Id.* at 1239–40.

**16.** 242 Neb. 426, 495 N.W.2d 475 (1993). At the time *Childs* was decided, Nebraska issued "In Transit" stickers to newly acquired cars. The expiration date was not visible, however, without pulling the car over to examine the sticker.

**17.** *See State v. LaBarge*, 275 S.C. 168, 268 S.E.2d 278 (1980) (noting that all presumptions of law are in favor of innocence until proven otherwise).

vehicle is being operated in violation of the law prior to stopping the driver.[18]

We understand the problem faced by law enforcement officers who are unable to determine whether a car bearing a temporary license tag is registered, insured, stolen, or otherwise involved in criminal activity. Given the legislative solutions available, however, we cannot conclude that mere compliance with the current law results in a reasonable suspicion of criminal activity.

To lawfully stop and detain Butler, Officer Lynch needed an objective, particularized, and articulable reason as to why he thought Butler was no longer within his forty-five grace period or was otherwise involved in criminal activity.[19] Lynch provided no such reason. Because the detention of Butler was unconstitutional, the trial court erred in refusing to suppress the evidence obtained as a result of the stop.[20]

**REVERSED AND REMANDED.**

HUFF, J., concurs.

ANDERSON, J., concurs in result only in a separate opinion.

ANDERSON, Judge (concurring in result only):

Although this case presents a difficult and troubling conundrum in regard to the enforcement of registration and licensing laws in South Carolina, I am persuaded by the logic and analysis of the *en banc* opinion of the Fourth Circuit Court of Appeals in *United States v. Wilson,* 205 F.3d 720 (4th Cir. 2000). *Wilson* enunciates:

---

18. S.C.Code Ann. § 56–3–2420 (1991).

19. *See United States v. Wilson,* 205 F.3d 720 (4th Cir.2000) (holding that absent an articulable, reasonable suspicion of unlawful conduct, the Fourth Amendment forbids stopping a car simply because it has a temporary tag).

20. *See State v. Copeland,* 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) ("The 'fruit of the poisonous tree' doctrine provides that evidence must be excluded if it would not have come to light but for the illegal actions of the police, and the evidence has been obtained by the exploitation of that illegality.") (citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441).

The government argues that South Carolina law authorizes the police to stop any car with temporary tags to determine whether the owner is in compliance with the state's requirement that permanent tags be obtained within thirty days of purchase. The government, however, cannot point to any statute, regulation, or court decision from South Carolina that authorizes such an investigatory stop. The government relies solely on our conclusory statement in *United States v. McDonald,* 61 F.3d 248, 254 (4th Cir.1995), that under South Carolina law the presence of temporary tags on a car "entitle[s] [police] to conduct an investigatory stop in order to determine whether the car's owner [is] in violation of state law requiring permanent tags within thirty days of a vehicle's purchase." The problem with *McDonald* is that it cited no authority for the purported statement of South Carolina law (for that matter, neither did the United States cite any authority when it briefed that case). We have made an independent search, and we find nothing in South Carolina's law to support the statement in *McDonald.* At this point, we can only conclude that *McDonald* misstated the law of South Carolina. Of course, any state law that authorized a search or seizure would be subject to the requirements of the Fourth Amendment. *See United States v. Manbeck,* 744 F.2d 360, 382 (4th Cir.1984) (holding that statute authorizing customs officials to board vessels "must be interpreted in a manner consistent with limitations imposed by the Fourth Amendment").

The Fourth Amendment does not allow a policeman to stop a car just because it has temporary tags . . . . .

*Wilson,* 205 F.3d at 724 (footnote omitted).

The reasoning in *Wilson* succinctly identifies the constitutional limitation imposed by the Fourth Amendment in this factual scenario.