665 S.E.2d 188

The STATE, Respondent,

v.

Terry T. TINDALL, Appellant.

No. 4402.

Court of Appeals of South Carolina.

Heard March 4, 2008.

Decided June 5, 2008.

Rehearing Denied Aug. 25, 2008.

306

John S. Nichols, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Christina T. Adams, of Anderson, for Respondent.

SHORT, J.

In this criminal action, Terry T. Tindall appeals the trial court's ruling that a search and seizure did not violate the Fourth Amendment. Tindall also appeals the trial court's

failure to charge the jury on the issue of third-party guilt. We affirm.

## FACTS

On the morning of April 15, 2004, Oconee County Sheriff's Deputy Sergeant Dale Colegrove was patrolling part of Interstate 85 in Oconee County. Colegrove stopped Tindall about 7 a.m. for speeding and following another vehicle too closely. Colegrove wrote Tindall a warning ticket but continued to talk to him. Approximately fifteen to twenty minutes into the stop, Tindall allegedly consented to a search of the vehicle. Sergeant Colegrove and other officers discovered three packages of cocaine under the rear bumper of the vehicle, weighing a total of 2,380 grams.

A grand jury indicted Tindall for trafficking in cocaine in excess of four hundred grams. At trial, Tindall moved to suppress the evidence discovered during the search. Colegrove and Tindall testified in camera during the suppression hearing.

Tindall testified that the morning of his arrest, he was traveling from his home in Hampton, Georgia to visit his brother in Durham, North Carolina. He testified he and his brother were going to Wilmington, North Carolina "to take care of some business" for their mother. The vehicle Tindall was driving at the time of his stop was rented to Lee Braggs. Tindall was named an authorized driver, as was another individual, Lewis Wilkerson. Tindall testified his car was not reliable enough to make the trip and because he did not have a credit card, Braggs had rented the vehicle for him.

After Colegrove pulled Tindall over, he informed Tindall he had been speeding, swerving, and following too closely. Tindall denied speeding or following too closely. Colegrove requested Tindall exit the vehicle and sit in the front seat of his patrol car. As Colegrove questioned Tindall, two other police cars arrived.

Colegrove asked Tindall how long he would be in North Carolina, and he replied he would only be there for the day.[1]

---

1. Tindall testified it took seven hours to get from Hampton to Durham and then over two hours to get from Durham to Wilmington.

Tindall testified he informed Colegrove he intended to leave the rental car in Durham and his brother was going to drive him back to Hampton. Tindall explained that once the car was in Durham, Braggs, a restaurateur, needed the car to pick up seafood in North Carolina or Florida. Tindall testified Braggs knew Tindall did not have the means to get to Durham, so Braggs rented the car and let Tindall drive it to Durham. Tindall also said Braggs "needed to get to Durham quicker than driving there. He needed to get to Durham to take care of some business, and he needed the car once he got to Durham."

Colegrove returned Tindall's license and other documents, along with a warning ticket. Tindall testified he did not feel as though he could leave because Colegrove was still talking to him and the other officers were standing beside the door of the police car. He further testified Colegrove never informed him he could leave. Colegrove then asked Tindall if he could search the car and Tindall replied: "I don't care or . . . I don't mind." Tindall testified he believed the stop lasted twenty minutes but was not surprised to learn the videotape from Colegrove's car revealed it was only twelve minutes.

Colegrove testified he observed Tindall traveling seventy-three miles per hour in a sixty-five-mile-per-hour zone. He also observed him following another car too closely and crossing the white line. Colegrove decided to stop Tindall and started the videotape equipment in his vehicle. Colegrove testified when Tindall exited the vehicle he did a "felony stretch," raising his hands as "kind of a stress relief action," which police officers are taught to look for in criminal patrol classes. He further testified Tindall continued to act very nervous even after learning he would only receive a warning ticket. He also testified normally once people learn they will not receive a ticket their nervousness subsides, but Tindall continued to have a rapid heartbeat. On cross-examination, Colegrove admitted he did not document Tindall's physical manifestations of nervousness in his report.

Additionally, Colegrove testified he found the circumstances of Tindall's trip suspicious because the car had to be returned to Atlanta that same day and Tindall was not the renter of record. Also, Colegrove testified the cities traveled to and

from were considered "drug hubs." Based on his observations, Colegrove concluded Tindall was concealing something illegal inside the car.

Following the suppression hearing, the trial court denied Tindall's motion to suppress finding Colegrove had a reasonable suspicion that something illegal was occurring. Tindall also moved to suppress a statement he gave to officers at the scene of the arrest. The trial court denied the motion to suppress the statement.

The jury convicted Tindall of trafficking in cocaine. The trial court sentenced Tindall to twenty-five years imprisonment and assessed a $250,000 fine. This appeal followed.

## STANDARD OF REVIEW

The South Carolina Supreme Court has articulated the standard of review to apply to Fourth Amendment search and seizure cases. *State v. Brockman*, 339 S.C. 57, 528 S.E.2d 661 (2000). A trial court's factual rulings are reviewed under the "clear error" standard, like any other factual finding. *Id.* at 66, 528 S.E.2d at 666. The appellate court will affirm if any evidence supports the ruling and reverse only if there is clear error. *Id.* Under the "clear error" standard, an appellate court will not reverse a trial court's finding of fact simply because it would have decided the case differently. *State v. Pichardo*, 367 S.C. 84, 95–96, 623 S.E.2d 840, 846 (Ct.App. 2005).

## LAW/ANALYSIS

### I. Fourth Amendment Violation

■ Tindall contends the trial court erred in denying his motion to suppress the cocaine because the traffic stop and subsequent encounter violated his Fourth Amendment rights. We disagree.

■ The Fourth Amendment guarantees a person the right to be secure from unreasonable searches and seizures. U.S. Const. amend. IV; *State v. Butler*, 343 S.C. 198, 201, 539 S.E.2d 414, 416 (Ct.App.2000). "[T]he Fourth Amendment protects against unreasonable searches and seizures, including seizures that involve only a brief detention." *State v. Pichar-*

*do* 367 S.C. 84, 97, 623 S.E.2d 840, 847 (Ct.App.2005). A temporary detention during an automobile stop, even if only for a brief period and for a limited purpose, constitutes a seizure within the meaning of the Fourth Amendment. *State v. Maybank*, 352 S.C. 310, 315, 573 S.E.2d 851, 854 (Ct.App. 2002). Thus, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). When probable cause exists to believe a traffic violation has occurred, the decision to stop the automobile is reasonable per se. *State v. Williams*, 351 S.C. 591, 598, 571 S.E.2d 703, 707 (Ct.App.2002).

 When police lawfully detain a motor vehicle for a traffic violation, they may order the driver to exit the vehicle without violating Fourth Amendment proscriptions on unreasonable searches and seizures. *Id.* In carrying out the stop, the police "may request a driver's license and vehicle registration, run a computer check, and issue a citation." *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir.1998) (quoting *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Once the underlying basis for the initial traffic stop has concluded, any further detention for questioning is not automatically unconstitutional. *Pichardo*, 367 S.C. at 98–99, 623 S.E.2d at 847–48. An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop and the scope of the detention must be carefully tailored to its underlying justification. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention. *Williams*, 351 at 598–99, 571 S.E.2d at 707–08.

 Lengthening a detention once an initial stop is completed is permissible in two situations: (1) the officer has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring; or (2) the initial detention has become a consensual encounter. *Pichardo*, 367 S.C. at 99, 623 S.E.2d at 847–48 (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1349 (10th Cir.1998)). Thus, an "officer's continued questioning of a vehicle's driver and passenger outside the

scope of a valid traffic stop passes muster under the Fourth Amendment either when the officer has a reasonable articulable suspicion of other illegal activity or when the valid traffic stop has become a consensual encounter." *Id.*

The term "reasonable suspicion" requires a particularized and objective basis that would lead one to suspect another of criminal activity. *State v. Woodruff,* 344 S.C. 537, 546, 544 S.E.2d 290, 295 (Ct.App.2001). In determining whether reasonable suspicion exists, the whole picture must be considered. *United States v. Sokolow,* 490 U.S. 1, 8, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). The burden is on the State to articulate facts sufficient to support reasonable suspicion. *State v. Butler,* 343 S.C. at 202, 539 S.E.2d at 416.

We find the traffic stop ended when Colegrove issued the warning and returned Tindall's license. Therefore, Tindall was detained after the conclusion of the traffic stop. The State argues the detention was consensual. We need not determine if the detention was consensual because we find Colegrove had an objectively reasonable articulable suspicion illegal activity had occurred or was occurring.

Colegrove testified he further detained Tindall because he believed something illegal was occurring based on Tindall's actions after the stop. Colegrove observed numerous things after the stop including: 1) Tindall was nervous even after receiving the warning; 2) Tindall was driving a rental car that he had not rented; 3) Tindall was driving only one way and then dropping the car off; 4) Tindall planned on driving approximately eighteen hours in one day; and, 5) the cities involved were both "drug hubs." We find evidence in the record to support a determination that Colegrove had a reasonable suspicion something illegal was occurring. Therefore, the search and seizure did not violate Tindall's Fourth Amendment rights and the trial court did not err in admitting the cocaine.

## II. Suppression of Statement

Tindall argues the trial court erred in admitting his statement because it was obtained as a result of the alleged violation of the Fourth Amendment. We disagree. Although Tindall's Brief references *Miranda v. Arizona,* 384 U.S. 436,

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the argument solely concerns the legality of the search. Because we find the search legal, as previously discussed, the trial court did not err in admitting the statement.

## III. Third–Party Guilt

Tindall maintains the trial court erred in failing to instruct the jury on the issue of third-party guilt. We disagree.

The trial court is required to charge the law as determined from the evidence presented at trial. *State v. Gates,* 269 S.C. 557, 561, 238 S.E.2d 680, 681 (1977). If any evidence supports a charge, it should be given. *State v. Burriss,* 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999). A trial courts refusal to give a requested charge must be both erroneous and prejudicial to warrant reversal. *State v. Burkhart,* 350 S.C. 252, 261, 565 S.E.2d 298, 303 (2002). Failure to give requested jury instructions is not prejudicial error where the instructions given afford the proper test for determining the issues. *Id.* at 263, 565 S.E.2d at 304.

In the recent decisions of *State v. Rice*[2] and *State v. Swafford*[3], this Court reiterated that the rule for admitting third-party guilt in South Carolina is found in *State v. Gregory,* 198 S.C. 98, 16 S.E.2d 532 (1941). The rule states:

[E]vidence offered by [an] accused as to the commission of the crime by another person must be limited to such facts as are inconsistent with his own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence; evidence which can have (no) other effect than to cast a bare suspicion upon another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.... [B]efore such testimony can be received, there must be such proof of connection with it, such a train of facts or circumstances, as tends clearly to point out such other person as the guilty party.

2. 375 S.C. 302, 652 S.E.2d 409 (Ct.App.2007).

3. 375 S.C. 637, 654 S.E.2d 297 (Ct.App.2007).

*Gregory,* 198 S.C. at 104–05, 16 S.E.2d at 534–35 (internal citations omitted). The *Gregory* rule "and its analogues in other jurisdictions" require the trial court to "focus the trial on the central issues by excluding evidence that has only a very weak logical connection to the central issues." *Rice,* 375 S.C. at 320, 652 S.E.2d at 418. "[T]he *Gregory* rule [also] requires the trial judge to consider the probative value or the potential adverse effects of admitting proffered third-party guilt evidence." *Swafford,* 375 S.C. at 641, 654 S.E.2d at 299.

While these third-party guilt cases revolve around the *admission of evidence* of third-party guilt, Tindall appeals the trial courts *failure to charge the jury* on third-party guilt. The evidence at trial indirectly implicating a third party included Tindalls testimony that he took possession of the rental vehicle when [i]t was left in the driveway of [his] home the day before his trip and the fact that he did not rent the vehicle. The trial court found it had not heard any testimony in particular blaming a third party. The evidence that someone other than Tindall placed the drugs in the car raised merely a conjectural inference at best and we find no error by trial court based on *State v. Gregory.*

Furthermore, the trial court charged the jury on mere presence, stating:

> Now, to prove possession in this case, the State must prove beyond a reasonable doubt that the defendant had both the power and the intent to control the disposition or use of the cocaine. Possession may be either actual or constructive. Actual possession means that the cocaine was in the actual physical custody of the defendant. Constructive possession means that the defendant had dominion and control or the right to exercise dominion or control over any of the cocaine itself or the property in which the cocaine was found.
>
> Mere presence at the scene where the drugs were found is not enough to prove possession. Actual knowledge of the presence of the cocaine is strong evidence of the defendants intent to control its disposition or use. The defendants knowledge and possession may be inferred when a substance is found on the property under the defendants control. However, the inference is simply an evidentiary fact to be taken into consideration by you along with other

evidence in the case and to be given the weight you decide it should have.

We find this charge adequately charged the law as determined from the evidence presented at trial. *See Gates,* 269 S.C. at 561, 238 S.E.2d at 681 (finding trial court required to charge the law as determined from the evidence presented at trial). Accordingly, because the charge given provided the proper law for the jury to consider given the evidence presented, the trial court did not err in failing to give the requested charge.

## CONCLUSION

For the foregoing reasons, the trial courts order is

**AFFIRMED.**

ANDERSON and THOMAS, JJ., concur.