682 S.E.2d 307

**The STATE, Appellant,**

. v.

**William Javier RIVERA and Jose M. Medero, Respondents.**

**No. 4598.**

Court of Appeals of South Carolina.

Submitted June 1, 2009.

Decided July 22, 2009.

Rehearing Denied Sept. 17, 2009.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney

General Norman Mark Rapoport, all of Columbia; and Solicitor Jay E. Hodge, of Cheraw, for Appellant.

Chief Appellate Defender Joseph L. Savitz, III, of Columbia, for Respondents.

GOOLSBY, A.J.:

The State appeals: (1) the trial court's finding William Javier Rivera and Jose M. Medero (collectively "Respondents") were unlawfully detained following a traffic stop, and (2) the trial court's holding that evidence seized during the detention was inadmissible. We affirm.[1]

## FACTS

Police Sergeant David Lane stopped a vehicle driven by Rivera for "following too close." Lane approached the vehicle and asked Rivera to produce his driver's license and vehicle registration. Rivera handed Lane his driver's license and a rental agreement for the vehicle.

Lane then asked Rivera to step out of the vehicle. Once Rivera exited the vehicle, Lane asked Rivera several questions, including where he and the passenger, Medero, were coming from, how long they had been there, where they were going, and the purpose of their trip. Rivera responded they were returning from New York.[2] He said they had gone there to visit Medero's grandmother and also there had been a death in Rivera's family. He stated they stayed in New York for one week.

Next, Lane asked Medero a series of similar questions. Medero stated they had been in Yonkers, New York, visiting his nephew. He stated they were in New York for about five days.

Lane returned to Rivera, advised Rivera he would receive a warning ticket, and began filling out the citation. He then called for backup and began talking to Rivera about the

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. In his testimony, Lane stated he could not remember what response Rivera gave when asked about what part of New York he had visited.

transport of illegal drugs on the interstate. Lane asked Rivera if there were any weapons, drugs, or large sums of money in the vehicle, and Rivera responded in the negative. Lane also asked for permission to search the vehicle. After Rivera consented to the search, Lane and another officer searched the vehicle. They found heroin in the engine.

A grand jury indicted Respondents for trafficking in heroin. Prior to a bench trial, Respondents moved to suppress evidence found in Rivera's rental vehicle as the product of an unlawfully prolonged traffic stop and an invalid consent to search the vehicle. The State justified the detention that reached beyond the initial, valid stop for the following reasons: (1) the nervousness of the Respondents; (2) their inconsistent stories about the trip; (3) the strong odor of air fresheners within the car; and (4) the lack of luggage in the passenger compartment.

The trial court granted Respondents' motion, holding Lane lacked "sufficient indicators of criminal activity to justify any continued detention" beyond the purpose of the traffic stop; thus, any consent to search obtained from Rivera during that time amounted to an exploitation of an unlawful detention and was invalid.

The State appeals.

## LAW/ANALYSIS

The State argues the trial court erred in suppressing evidence seized from Rivera's rental vehicle and holding the evidence was the product of an unlawful detention and an invalid consent to search the vehicle. We disagree.

The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion.[3] An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law.[4]

---

3. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).

4. *State v. McDonald*, 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000).

■ In criminal cases, we, as an appellate court, only review errors of law.[5] This standard of review also applies to preliminary factual findings in determining the admissibility of certain evidence.[6] In Fourth Amendment search and seizure cases, our review is limited to determining whether there is any evidence to support the trial court's finding.[7] We will not reverse a trial court's findings of fact merely because we would have reached a different conclusion.[8]

■■ When probable cause exists to believe a traffic violation has occurred, the decision to stop the automobile is reasonable per se.[9] Once a vehicle has been lawfully detained for a traffic violation, a police officer may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.[10] The officer " 'may request a driver's license and vehicle registration, run a computer check, and issue a citation' " [11] however, "[a]ny further detention for questioning is beyond the scope of the ... stop and therefore illegal unless the officer has a reasonable suspicion of a serious crime." [12]

■■ "Warrantless searches and seizures are reasonable within the meaning of the Fourth Amendment when conducted under the authority of voluntary consent." [13] "Undoubtedly, a

5. *State v. Butler*, 353 S.C. 383, 388, 577 S.E.2d 498, 500 (Ct.App.2003) (citing *State v. Wilson*, 345 S.C. 1, 5–6, 545 S.E.2d 827, 829 (2001)).

6. *Id.*

7. *State v. Missouri*, 361 S.C. 107, 111, 603 S.E.2d 594, 596 (2004).

8. *State v. Tindall*, 379 S.C. 304, 309, 665 S.E.2d 188, 191 (Ct.App. 2008).

9. *Whren v. U.S.*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

10. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).

11. *U.S. v. Sullivan*, 138 F.3d 126, 131 (4th Cir.1998) (citation omitted).

12. *Id.; see also State v. Williams*, 351 S.C. 591, 598, 571 S.E.2d 703, 707 (Ct.App.2002).

13. *Palacio v. State*, 333 S.C. 506, 514, 511 S.E.2d 62, 66 (1999).

law enforcement officer may request permission to search at any time. However, when an officer asks for consent to search after an unconstitutional detention, the consent procured is per se invalid unless it is both voluntary and not an exploitation of the unlawful detention."[14] "Proof of voluntary consent alone is not sufficient. The relevant factors include the temporal proximity of [the] illegal seizure and consent, intervening circumstances, and the purpose and flagrancy of the official misconduct."[15]

██ Here, Lane lawfully detained the vehicle, requested Rivera's license and registration, and asked Rivera to exit the vehicle. In addition, Lane's initial questioning, including where Respondents were coming from, how long they had been there, where they were going, and the purpose of their trip, was reasonable in that the questions tangentially related to the purpose of the traffic stop. Once Lane informed Rivera he would receive a warning citation, however, the purpose of the stop ended and Lane's continued questioning concerning the transport of drugs on the interstate exceeded the scope of the stop. This amounted to a second and illegal detention[16] unless Lane entertained a reasonable suspicion of illegal activity sufficient to warrant that detention.

As we noted above, the trial court held Lane's suspicion of illegal drug activity rested on no reasonable basis, holding the Respondents' nervousness, standing alone, did not create a

---

**14.** *State v. Pichardo*, 367 S.C. 84, 105, 623 S.E.2d 840, 851 (Ct.App. 2005); *see also Brown v. State*, 188 Ga.App. 184, 372 S.E.2d 514, 516 (1988) ("[I]n order to eliminate any taint from an [illegal] seizure or arrest, there must be proof both that the consent was voluntary and that it was not the product of the illegal detention.").

**15.** *Brown*, 372 S.E.2d at 516.

**16.** *See Pichardo*, 367 S.C. at 98, 623 S.E.2d at 848 (citations omitted) ("Once the purpose of [the initial] stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention."); *see also U.S. v. Jones*, 234 F.3d 234, 241 (5th Cir.2000) ("The basis for the stop was essentially completed when the dispatcher notified the officers about the defendants' clean records, three minutes before the officers sought consent to search the vehicle. Accordingly, the officers should have ended the detention and allowed the defendants to leave. And the failure to release the defendants violated the Fourth Amendment.").

suspicion of criminal behavior,[17] the "stories" the Respondents told were not so inconsistent as to indicate criminal activity, and the absence of luggage in the back-seat area of the Respondents' automobile provided no basis for a suspicion of a crime particularly where the trunk, the usual place for luggage, "was filled" with suitcases. These matters and what weight to give them related solely to questions of fact singularly committed to the trial court's discretion.[18] Regarding the presence of air fresheners in the car, we read the trial court's order as saying it found no evidence the car contained them in the first place.

■ The evidence also supports the trial court's finding that Rivera's consent to search the vehicle was invalid as the product of an unlawful detention. The record demonstrates a minimal amount of time passed between the illegal detention and the ensuing consent,[19] there were no intervening circumstances, and, as stated above, Lane's actions in prolonging the detention had no legal basis.[20][21]

**AFFIRMED.**

CURETON, A.J., concurs. PIEPER, J., dissents in a separate opinion.

---

**17.** *See U.S. v. Portillo-Aguirre,* 311 F.3d 647, 656 n. 49 (5th Cir.2002).

**18.** *See Bodiford v. Spanish Oak Farms, Inc.,* 317 S.C. 539, 544, 455 S.E.2d 194, 197 (Ct.App.1995) (holding an appellate court cannot weigh the evidence in a law case).

**19.** The trial court found Lane stopped Rivera's vehicle at 6:55 p.m. At 7:05 p.m., Lane advised Rivera he would receive a warning ticket. Lane requested permission to search the vehicle at 7:06 p.m., and Rivera consented at that time.

**20.** *See Brown,* 372 S.E.2d at 516 (finding the defendant's consent to search his vehicle was invalid where there was no significant lapse of time between the unlawful detention and the consent, no intervening circumstances dissipated the effect of the unlawful detention and the officer's conduct had no arguable legal basis).

**21.** The dissent would find consent was obtained prior to any unlawful detention because Lane had not yet issued the warning citation and returned Rivera's driver's license and registration documents. The record, however, indicates the citation was never issued, at least during

PIEPER, J., dissenting:

I respectfully dissent. The learned trial judge was very thorough in his analysis and I believe all facets of the law were considered. I also recognize the analysis of the majority presents a close question. However, unlike the majority, I would find that the question of whether the purpose of the stop has been completed is a mixed question of law and fact. The moment at which a traffic stop concludes is often a difficult legal question. *State v. Williams*, 351 S.C. 591, 600–01, 571 S.E.2d 703, 708–09 (Ct.App.2002). Since the officer had not yet completed and issued the warning ticket and had not yet even returned the driver's license/registration documents, I would find that consent was obtained prior to any unlawful detention. *See United States v. Branch*, 537 F.3d 328, 336 (4th Cir.2008) ("The maximum acceptable length of a routine traffic stop cannot be stated with mathematical precision. Instead, the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose." "[O]nce the driver has demonstrated that he is entitled to operate his vehicle, and the police officer has *issued* the requisite warning or ticket, the driver must be allowed to proceed on his way.") (emphasis added) (internal citations omitted); *see also Williams*, 351 S.C. at 598, 571 S.E.2d at 707.

Notwithstanding, "[o]nce the underlying basis for the initial traffic stop has concluded, any further detention for questioning is not automatically unconstitutional." *State v. Tindall*, 379, S.C. 304, 310, 379 S.C. 304, 665 S.E.2d 188, 192 (Ct.App. 2008). I disagree with the majority's response and concern that acceptance of the analysis in this dissent would lead to an argument that the traffic stop arguably continued until Rivera received his property after being released from jail. I would distinguish this routine traffic stop situation from a situation

the stop. In fact, Lane testified, "If I would have gave [sic] it to him, I would have put it in his property at the jail."

Applying the dissent's reasoning to this case, one could argue the lawful traffic stop continued until Rivera received his property after being released from jail. Although we find the issuance of a citation and the return of a driver's license and registration are factors the trial court may consider in determining at what point the purpose of a lawful stop ends and the stop becomes unlawful, such factors are not determinative.

where a suspect has been arrested and placed in jail. Here, I would not find the consent rendered involuntary due to coercion, duress, or some improper means. Thus, since voluntary consent was obtained during a lawful detention, I would reverse the suppression of the State's evidence and remand the case for trial.